THE STATE OF OHIO, APPELLEE, *v.* BURKE, APPELLANT.

[Cite as *State v. Burke* (1995), 73 Ohio St.3d 399.]

(No. 94–498—Submitted April 4, 1995—Decided August 30, 1995.)

400

*Michael Miller,* Franklin County Prosecuting Attorney, and *Joyce S. Anderson,* Assistant Prosecuting Attorney, for appellee.

*David J. Graeff,* for appellant.

FRANCIS E. SWEENEY, SR., J.  Burke raises twenty-one propositions of law which we have fully reviewed and considered.  (See Appendix.)  However, in light of our recent decisions, we do not address each one in opinion form.  See *State v. Poindexter* (1988), 36 Ohio St.3d 1, 3, 520 N.E.2d 568, 570; *State v. Scudder* (1994), 71 Ohio St.3d 263, 643 N.E.2d 524; *State v. Simko* (1994), 71 Ohio St.3d 483, 487, 644 N.E.2d 345, 350.  We have also independently assessed the evidence relating to the death sentence, independently balanced the aggravating circumstances against the mitigating factors, and reviewed the proportionality of the sentence to sentences imposed in similar cases.  We hereby affirm the convictions and sentence of death.

I

GUILT PHASE

Statements by Accomplice

In the second proposition of law, appellant contends that the trial court erred in disallowing relevant hearsay statements made by Tanner concerning the

murder. According to appellant, these statements were admissible under Evid.R. 804(B)(3) as declarations against penal interest.

In order for Evid.R. 804 hearsay exceptions to apply, the declarant must be deemed unavailable. Although Tanner invoked his right against self-incrimination at the sentencing hearing, Tanner was not called as a witness during the guilt phase and cannot be said to have been unavailable during that phase. Thus, Tanner's statements were properly excluded.

Appellant's reliance on *State v. Landrum* (1990), 53 Ohio St.3d 107, 113, 559 N.E.2d 710, 719, is misplaced, since in that case the witness was deemed unavailable at the sentencing hearing because at that hearing he invoked his privilege against self-incrimination. Further, even in *Landrum, supra*, at 115, 559 N.E.2d at 721, where this court found that the exclusion of hearsay statements was erroneous, we did not find it prejudicial error in view of our independent assessment and reweighing of the evidence. Appellant's second proposition of law is without merit.

### Confrontation Rights

In the fourth proposition of law, appellant argues that he was denied his right to due process under *Brady v. Maryland* (1963), 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–1197, 10 L.Ed.2d 215, 218, and was denied his Sixth Amendment right to confrontation as a result of the police losing the tape recorded statement of state witness Janaia Prysock.

In *Arizona v. Youngblood* (1988), 488 U.S. 51, 58, 109 S.Ct. 333, 337, 102 L.Ed.2d 281, 289, the United States Supreme Court stressed that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." Appellant fails to show bad faith on the part of police. Since there is no evidence that the police deliberately lost, concealed or destroyed the tape, appellant's due process rights were not violated.

Further, the state produced a summary of the interview and Prysock testified at trial. Thus, appellant had the opportunity "to be confronted with the witnesses against him" as guaranteed by the Sixth Amendment. In fact, defense counsel took advantage of this right by questioning this witness as to any inconsistencies between the summary and her testimony on direct examination. For these reasons, appellant's fourth proposition of law is without merit.

### Manifest Weight of the Evidence

In the fifth proposition of law, appellant contends that the guilty verdict is against the manifest weight of the evidence. Appellant argues that the evidence does not demonstrate that the victim died directly from stab wounds, and,

further, since there was no evidence to prove specific intent or purpose to kill, the killing constitutes involuntary manslaughter, not aggravated murder.

However, there was testimony that McBride died as a result of being stabbed. The deputy coroner clearly stated that the victim's death was caused by an irregular beating of the heart as a result of all of the stab wounds to his body. Thus, the twelve stab wounds suffered by the victim collectively resulted in his heart failure and death.

We likewise reject appellant's contention that there was insufficient evidence to support a finding that he acted with a purpose to kill. Intent need not be proven by direct testimony. *State v. Lott* (1990), 51 Ohio St.3d 160, 168, 555 N.E.2d 293, 302. Instead, an intent to kill "may be deduced from the surrounding circumstances, including the instrument used, its tendency to destroy life if designed for that purpose, and the manner of inflicting the wound." *State v. Robinson* (1954), 161 Ohio St. 213, 218–219, 53 O.O. 96, 99, 118 N.E.2d 517, 521.

In this case, there was evidence that the victim was stabbed twelve times and five of the wounds showed evidence of healing consistent with someone prodding the victim with a knife an hour before the last wounds were inflicted. There was also direct testimony by state witnesses that appellant's hands and clothing were covered with blood as he left the victim's house. Although appellant testified that he and Tanner were at McBride's house for only ten or twenty minutes, the ransacking of the house suggests otherwise. Also, appellant's contention that McBride was stabbed only outside the house, by Tanner, is contrary to the deputy coroner's testimony concerning the healing wounds found on the victim's body. Obviously, the trier of fact weighed this conflicting evidence and assessed the credibility of witnesses in finding appellant guilty as charged. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus. We believe there was sufficient evidence presented on which to convict appellant of aggravated murder.

### Effective Assistance of Counsel

In the twentieth proposition of law, appellant cites ten instances of alleged ineffective assistance of counsel during the guilt phase. In the sixth proposition of law, appellant claims that defense counsel's waiver of closing argument at the mitigation phase also constituted ineffective assistance of counsel.

Reversal of a conviction on the grounds of ineffective assistance of counsel "requires that the defendant show, first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial." *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, paragraph two of the syllabus. None of the instances raised by appellant demonstrates prejudice or that defense counsel's

performance was so deficient that there is a reasonable probability that if it were not for these errors, the result would have been different. *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus.

As to defense counsel's waiver of closing argument at the mitigation hearing, we find that this may have simply been a tactical decision made by defense counsel to prevent the state from splitting closing argument and staging a strong rebuttal. (See *State v. Apanovitch* [1987], 33 Ohio St.3d 19, 24–25, 514 N.E.2d 394, 400–401.) We do not find that appellant has proven his claim of ineffective assistance of counsel. Consequently, we reject appellant's sixth and twentieth propositions of law.

## Jury Instructions

In the seventh and ninth propositions of law, appellant contends that the trial court erred in failing to delete "prior calculation and design" from the specification language contained in R.C. 2929.04(A)(7) in its instructions to the jury at both the guilt and sentencing phases, and in relying on prior calculation and design in sentencing. Although it is improper for a jury to consider prior calculation and design and principal offender status as separate aggravating circumstances (*State v. Penix* [1987], 32 Ohio St.3d 369, 513 N.E.2d 744), we have recently held that a trial court may instruct the jury on prior calculation and design and principal offender status disjunctively in the same specification, as the court did here. *State v. Cook* (1992), 65 Ohio St.3d 516, 527, 605 N.E.2d 70, 82–83. However, the court erred in not instructing the jurors that they must be unanimous in agreeing on which of the alternatives Burke was guilty of. *State v. Johnson* (1989), 46 Ohio St.3d 96, 104–105, 545 N.E.2d 636, 644–645. We find the error harmless, since the guilty verdict on Count One of the indictment already showed unanimous agreement that Burke committed the murder with prior calculation and design.

Nor do we find error in the court's charge on voluntary manslaughter, as appellant contends in the eighteenth proposition of law. Since there was no evidence that the victim provoked appellant, the court did not err in refusing to instruct the jury on provocation. See *State v. Lawrence* (1989), 44 Ohio St.3d 24, 26, 541 N.E.2d 451, 454. Further, defense counsel failed to object to these instructions. Consequently, we overrule these propositions of law.

## Voluntariness of Police Interview

In his twelfth proposition of law, appellant contends that his videotaped statement to police was involuntary and that the trial court erred in admitting this tape into evidence and in allowing it to be played for rebuttal purposes to the jury.

Defense counsel has waived all but plain error by failing to object to the admissibility of the tape. *State v. Williams* (1977), 51 Ohio St.2d 112, 117, 5 O.O.3d 98, 101, 364 N.E.2d 1364, 1367. Although the tape reveals that police failed to advise appellant of one of the consequences of waiving his *Miranda* rights (specifically, that his statements could be used against him in a court of law), the admission of the tape was harmless and did not affect the outcome of the trial. *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph three of the syllabus.

Nor was appellant coerced into making a statement to police. While police made some false statements to appellant during the interrogation, this does not necessarily make his statements involuntary. *State v. Cooey* (1989), 46 Ohio St.3d 20, 27, 544 N.E.2d 895, 906–907. In fact, we find that despite these misrepresentations, "defendant's will to resist was not overborne by threats or improper inducements." *State v. Melchior* (1978), 56 Ohio St.2d 15, 25, 10 O.O.3d 8, 14, 381 N.E.2d 195, 202. Moreover, the trial judge specifically cautioned the jury that the videotape contained statements that were not testified to by any witness in the case and that it was only to be considered for the limited purpose of determining appellant's credibility. Appellant's twelfth proposition of law is without merit.

## II

### PENALTY PHASE

#### Recorded Statement of Tanner

In the third proposition of law, appellant argues that the trial court committed prejudicial error by refusing to admit into evidence Tanner's videotaped interview with police. He also contends that this ruling prevented him from using the expertise of psychologist Dr. Reardon, who would have testified as to the meaning of Tanner's body language during the interrogation. We find appellant's arguments unpersuasive.

The trial judge carefully listened to both sides on this issue before ruling that the videotape of Tanner was inadmissible. The tape reveals that Tanner agreed to answer questions concerning events that occurred earlier in the evening. However, he invoked his right to remain silent when questioned about the actual murder. Since the silence of a defendant is ambiguous and not probative of guilt (see *Doyle v. Ohio* [1976], 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91; *State v. Combs* [1991], 62 Ohio St.3d 278, 281, 581 N.E.2d 1071, 1075–1076), the trial court did not abuse its discretion and appellant was not prejudiced by the exclusion of this videotape.

For these reasons, we reject the third proposition of law.

### Postponement of Sentencing

In the fifteenth proposition of law, appellant contends that he was denied his constitutional and statutory right to effective proportionality review by the court's refusal to postpone sentencing until the conclusion of Tanner's trial. Appellant submits that the trial court's action prejudiced him, since Tanner received only a life sentence for McBride's murder.

We have held previously that the disparity of sentence between accomplices does not justify reversal of a death sentence, where the sentence is neither illegal nor an abuse of discretion. *State v. Green* (1993), 66 Ohio St.3d 141, 151, 609 N.E.2d 1253, 1261. We reject appellant's argument, since there is no showing that Burke's death sentence was either illegal or an abuse of discretion.

Further, we note that "trial courts have broad discretion to decide whether to grant a continuance." *State v. Powell* (1990), 49 Ohio St.3d 255, 259, 552 N.E.2d 191, 196. Here, the trial court did not abuse its discretion in refusing to postpone sentencing until after Tanner's trial. See *State v. Unger* (1981), 67 Ohio St.2d 65, 67, 21 O.O.3d 41, 43, 423 N.E.2d 1078, 1080.

Appellant's fifteenth proposition of law is overruled.

### III

### INDEPENDENT ASSESSMENT OF SENTENCE

As required by R.C. 2929.05(A), we now independently review the death penalty sentence to determine whether the aggravating circumstances outweigh the mitigating factors and whether the sentence is appropriate and proportionate to the penalty imposed in similar cases.

After independent assessment, we find that the evidence establishes beyond a reasonable doubt the aggravating circumstances appellant was found guilty of: (1) that the murder was committed for the purpose of escaping detection, apprehension, trial or punishment for another offense committed (aggravated robbery) (R.C. 2929.04[A][3]); and (2) that appellant was either the principal offender or committed the aggravated murder with prior calculation and design (R.C. 2929.04[A][7]). Prior calculation and design was proven by the fact that the victim was brutally stabbed twelve times and that five of the stab wounds showed evidence of healing, consistent with a prodding of the knife into the victim at least an hour before the final wounds were inflicted.

We further find that the nature and circumstances of the offense provide no mitigating features. This was simply a cold-blooded murder of a seventy-two-year-old widower who unfortunately knew appellant well enough and trusted him to invite him into his home late at night. In their hunt for a gun, appellant and Tanner stabbed the victim twelve times and ransacked McBride's entire house.

The two men were later overheard making light of the situation to family members by singing a song about going to Lucasville. Thus, under these circumstances, there is no evidence of mitigation.

Further, while appellant's "history, character, and background" provide some mitigating value, we do not find it to be significant. Appellant's mother, who was an alcoholic, deserted the family when he was young. There was also evidence that because appellant's father and grandparents worked, he and his siblings were often left alone and were described as having raised themselves. Appellant also missed a great deal of school. Further, appellant was stabbed through the arm by his brother as a teenager. However, despite this negative family history, appellant was described by the minister who baptized him in 1988 as a "gentle spirit."

As to the statutory mitigating factors, those factors listed under R.C. 2929.04(B)(1), (2), (4) and (5) have little or no weight. There was no evidence that the victim induced his attack. We further find that appellant was under no duress, coercion or provocation. Nor was his age of twenty-eight of any consequence. Finally, R.C. 2929.04(B)(5) has little applicability, since appellant had two prior theft convictions.

R.C. 2929.04(B)(3) deserves some weight since appellant's I.Q. score placed him within the "borderline mentally retarded range of functioning loss." Nevertheless, Dr. Reardon, appellant's own expert witness, testified that appellant knew that he should not have gone to McBride's house the night of the murder and felt responsible for the death. Under these circumstances, we do not believe appellant lacked substantial capacity to appreciate the criminality of his conduct or to conform his criminal conduct.

As to R.C. 2929.04(B)(6), the evidence is inconclusive as to who was the principal offender. Despite appellant's attempts to show that Tanner was solely responsible for the victim's death, his version of what occurred the night of the murder does not square with the evidence presented. Thus, appellant has not proven this factor.

Under R.C. 2929.04(B)(7), the catchall category, we consider the testimony that appellant suffered from a "borderline personality disorder." *State v. Davis* (1992), 63 Ohio St.3d 44, 51, 584 N.E.2d 1192, 1198. However, since it does not rise to the level of a "mental disease or defect" under R.C. 2929.04(B)(3) (see *State v. Seiber* [1990], 56 Ohio St.3d 4, 9, 564 N.E.2d 408, 415), and since we believe appellant knew right from wrong, this is entitled to little weight. See *State v. Hill* (1992), 64 Ohio St.3d 313, 335, 595 N.E.2d 884, 901. Nor should residual doubt be given any weight. The evidence clearly shows that appellant intended to kill McBride and that he was responsible for the murder.

In considering the manner in which the victim was repeatedly stabbed, the relationship between the victim and appellant as well as the fact that the victim was robbed of his property, we find that the aggravating circumstances outweigh the mitigating factors beyond a reasonable doubt.

Finally, we conclude that the death penalty imposed in this case is neither excessive nor disproportionate to other similar capital cases involving murder combined with aggravated theft offenses. See *State v. Green* (1993), 66 Ohio St.3d 141, 151, 609 N.E.2d 1253, 1261; *State v. Wiles* (1991), 59 Ohio St.3d 71, 571 N.E.2d 97; *State v. Lott* (1990), 51 Ohio St.3d 160, 555 N.E.2d 293. The fact that Tanner was subsequently sentenced to life imprisonment does not warrant reversal, since Burke's sentence was neither illegal nor an abuse of discretion. *State v. Jamison* (1990), 49 Ohio St.3d 182, 191, 552 N.E.2d 180, 188.

Accordingly, for the foregoing reasons, we affirm the conviction and sentence of death.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, WRIGHT, RESNICK, PFEIFER and COOK, JJ., concur.

### APPENDIX

"Proposition of Law No. I[:] Prejudicial error occurs at the mitigation phase of the trial when the trial court refuses a request from the accused for an instruction on residual doubt and restricts defense counsel in commenting on it.

"Proposition of Law II[:] Prejudicial error occurs when the trial court refuses to allow relevant statements by the co-defendant into evidence during the first phase of the trial, when such statements are admissible under an exception to the hearsay rule.

"Proposition of Law III[:] Prejudicial error occurs when the trial court refuses to permit the introduction of a previous recorded statement of the co-defendant at the mitigation phase of the trial.

"Proposition of Law IV[:] The accused is denied his right to confrontation contra the Sixth Amendment to the Constitution when a tape recording of a crucial witness is 'lost' by the police, and said tape would assist the finder of fact in its determination regarding residual doubt.

"Proposition of Law V[:] Where the evidence demonstrates that the decedent did not die from stab wounds, the verdict is against the manifest weight of the evidence.

"Proposition of Law VI[:] The conduct of defense counsel during the conclusion of the penalty phase of the trial violated the appellant's right to effective assistance of counsel under the Fifth, Sixth, Eighth, and Fourteenth Amend-

ments to the United States Constitution and Article I, Sections 9 and 10, of the Ohio Constitution.

"Proposition of Law VII[:] The trial court committed prejudicial error in refusing to narrow the subgrouping in R.C. 2929.04(A)(7) by failing to delete 'prior calculation and design' from the specification, thereby denying the accused a fair trial contra the Sixth, Eighth, and Fourteenth Amendments to the Constitution and Article I, Section 10, of the Ohio Constitution.

"Proposition of Law VIII[:] Prosecutorial misconduct during the penalty phase of the closing arguments denied the accused a proper hearing in violation of the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 9 and 16, of the Ohio Constitution.

"Proposition of Law IX[:] The trial court commits prejudicial error in considering improper aggravating circumstances in its written decision, thus denying the accused his Eighth and Fourteenth Amendment rights to the Constitution.

"Proposition of Law X[:] A. The felony specification of R.C. 2929.04(A)(7) fails to narrow the class or persons eligible for the death penalty, and therefore, violates the Eighth and Fourteenth to the U.S. Constitution and Article I, Section 9, of the Ohio Constitution. B. Under the facts and testimony presented in this case, the felony specification of R.C. 2929.04(A)(7) failed to narrow the class or · persons eligible for the death penalty, and the death sentence must be reversed.

"Proposition of Law XI[:] The trial court erred by instructing the jury at the mitigation phase of the trial that its sentencing option with respect to death is a recommendation.

"Proposition of Law XII[:] A. Prejudicial error occurs when the statement of the accused taken at police headquarters is admitted into evidence, which is involuntary as a matter of law. B. Prejudicial error occurs when the statements given by the accused are introduced in their entirety in rebuttal.

"Proposition of Law XIII[:] When the accused is not present during crucial portions of his trial, and does not personally waive his presence, he is denied his Fifth and Sixth Amendment rights under the U.S. Constitution and Article I, Section 10, of the Ohio Constitution.

"Proposition of Law XIV[:] The trial court commits prejudicial error in failing to excuse the alternate jurors from further proceedings once deliberation commenced in the mitigation phase, contra the Sixth and Fourteenth Amendments to the U.S. Constitution and Article I, Section 10 of the Ohio Constitution.

"Proposition of Law XV[:] The trial court committed prejudicial error in refusing to postpone the sentence of the accused until the conclusion of the co-defendant's case, and the resulting sentence denied the accused effective review of the proportionality process in Ohio.

"Proposition of Law XVI[:] Prejudicial error occurs at the mitigation phase of the trial when the jury considers multiple murder counts and aggravating circumstances, contra the Eighth and Fourteenth Amendments to the U.S. Constitution and Article I, Sections 9 and 10, of the Ohio Constitution.

"Proposition of Law XVII[:] When cumulative photos of the decedent are admitted into evidence, the prejudicial effect violates the accused's Sixth, Eighth, and Fourteenth Amendment rights to a fair trial.

"Proposition of Law XVIII[:] Where the trial court gives an improper jury instruction on voluntary manslaughter, the accused's Sixth and Fourteenth Amendment rights to a fair trial are violated.

"Proposition of Law XIX[:] The failure on the part of the trial judge to be present during the entire proceedings is prejudicial as a matter of law, and the result violates the accused's Sixth Amendment constitutional right to a fair trial.

"Proposition of Law XX[:] Mark Burke was denied a fair trial because of the ineffective assistance of his counsel, contra the Sixth and Fourteenth Amendments to the U.S. Constitution.

"Proposition of Law XXI[:] Imposition of the death sentence violates the Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution and Article I, Sections 2, 9, 10 and 16, of the Ohio Constitution."