OPINION
On March 5, 1999, the Montgomery County Sheriff's Office SWAT team and members of the Dayton Police Department's narcotics unit executed a search warrant at 2512 Oakridge Drive, Dayton. Upon forcibly entering that residence, Sgt. Glen MacIntosh went immediately upstairs, where he encountered a locked bedroom door. With assistance from another officer, Sgt. MacIntosh kicked open the door and entered the bedroom.
Sgt. MacIntosh saw a gun bounce across the bed in the room, as though somebody had just thrown it. Sgt. MacIntosh also observed Defendant, Lawrence Maddox, standing near an open window, about three or four feet away from the gun. Defendant had one hand on the windowsill and was bent over with his leg raised and knee bent, in an effort to get out through the window. Police immediately restrained Defendant.
Dayton Police Officers Orndorf and House were stationed outside the residence when other officers went in. Five to ten seconds later they observed Defendant open one of the upstairs bedroom windows and attempt to climb out. With their weapons pointed at Defendant, Officers Orndorf and House ordered Defendant to get back inside, which he did. Five to ten seconds later Defendant once again appeared at that window and attempted to come out. Officers Orndorf and House once again ordered Defendant to get back inside. This time, Defendant appeared to sit or crouch down in the corner by the window, next to a dresser on that outside wall.
After the SWAT team secured the residence Officers Orndorf and House entered the upstairs bedroom where the Defendant had been found. Officer House looked behind the dresser and discovered a baggie of suspected crack cocaine on the floor and two hundred twenty-two dollars in cash laying next to it. Neither the baggie nor the money had any dust or dirt on them, unlike everything else in the bedroom. On the top of that dresser he found a small piece of suspected crack cocaine, a penny covered with suspected crack residue, rolling papers with suspected crack residue, and a government document bearing Defendant's name and Defendant's signature acknowledging receipt of the document. The bedroom looked "lived in," with sheets and blankets on the bed, clothes and shoes in the room that looked as though they would fit Defendant, and personal items on top of the dresser.
In the kitchen police discovered another baggie of suspected crack cocaine in the refrigerator. This crack cocaine had not yet hardened, but was still gooey and pliable and appeared to have been freshly cooked. On the kitchen table police found an electronic scales, a plate, a knife, and a pickle jar, all with cocaine residue on them. Inside a cupboard police discovered an Ohio identification card in Defendant's name bearing the 2512 Oakridge Drive address. Another firearm was discovered inside a kitchen closet.
Laboratory testing revealed that both firearms found inside the house were operable. The baggie found behind the dresser in the upstairs bedroom tested positive for crack cocaine, which weighed 8.22 grams. The baggie inside the refrigerator also tested positive for crack cocaine, which weighed 23.67 grams., Defendant was subsequently indicted for possession of crack cocaine, over twenty-five grams, R.C. 2925.11(A), possession of criminal tools, R.C. 2923.24(A), and having weapons while under disability, R.C. 2923.13(A)(3). Defendant waived his right to a jury trial on the weapons under disability charge., Defendant was found guilty following a jury trial of possessing over twenty-five grams of crack cocaine and possessing criminal tools with an intent to use them to commit trafficking in cocaine. The trial court separately found Defendant guilty of having weapons while under disability. The trial court sentenced Defendant to terms of imprisonment totaling seven years.
On July 27, 2000, we granted Defendant leave to file a delayed appeal.
 FIRST ASSIGNMENT OF ERROR THE EVIDENCE AGAINST APPELLANT IS INSUFFICIENT AS A MATTER OF LAW.
 SIXTH ASSIGNMENT OF ERROR THERE WAS INSUFFICIENT EVIDENCE TO CONVICT APPELLANT OF THE POSSESSION OF CRIMINAL TOOLS.
In these assignments of error Defendant argues that the evidence presented at trial was legally insufficient to prove that he possessed either the crack cocaine or the scales found in the residence.
A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law. State of Ohio v. Thompkins, (1997), 78 Ohio St.3d 380. The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus of State v. Jenks (1991), 61 Ohio St.3d 259:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
On the drug possession charge, the State was required to prove that Defendant knowingly possessed crack cocaine in an amount exceeding twenty-five grams but less than one hundred grams. R.C. 2925.11(A), (C)(4)(a). On the criminal tools charge, the State was required to prove that Defendant possessed a substance, device, instrument or article with purpose to use it criminally. R.C. 2923.24(A).
"Knowingly" is defined in R.C. 2901.22(B):
 A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.
In State v. Weber (March 24, 2000), Montgomery App. No. 17800, unreported, this court stated:
 Further, "possession" is defined as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). Possession may be actual or constructive. State v. Butler (1989), 42 Ohio St.3d 174, 175, 538 N.E.2d 98. Constructive possession is shown when an individual can exercise dominion or control over the object, whether or not it is in his immediate physical possession. State v. Wolery (1976), 46 Ohio St.2d 316, 348 N.E.2d 351, certiorari denied (1976), 429 U.S. 932.
The jury could reasonably infer from the evidence presented that Defendant lived at this residence. As we pointed out in Weber, however, more than that is required to prove that Defendant possessed the crack cocaine and scales found there. The evidence here demonstrates much more than mere occupation of the premises to connect Defendant with contraband that police found there., Defendant was physically present in this residence when police entered and discovered crack cocaine, guns, and a set of scales inside. In fact, Defendant was found in the same bedroom where one of the guns and some of the crack cocaine was discovered. A small piece of crack cocaine was discovered on top of the dresser in plain view in that bedroom. No one other than the Defendant was present in that bedroom or elsewhere in the residence. There was no evidence that anyone except Defendant lived there. More crack cocaine was discovered in the refrigerator in the kitchen. In that same room police discovered, in plain view on the kitchen table, a set of scales, a knife, a plate and a jar, all containing cocaine residue.
The jury could reasonably infer from the evidence presented that the crack cocaine and money found behind the dresser in the upstairs bedroom had recently been placed there by Defendant, most likely when police entered to serve the search warrant, and that the crack cocaine discovered in the refrigerator had recently been cooked and placed in the refrigerator to cool and harden. The fact that no other persons were in the residence, which police surrounded before they entered to search it, strongly supports the inference.
The totality of this evidence was sufficient to prove that Defendant possessed the crack cocaine and the set of scales found in this residence. Viewing this evidence in a light most favorable to the State, a rational trier of fact could find the essential elements of possession of crack cocaine and possession of criminal tools proven beyond a reasonable doubt. Jenks, supra. Therefore, Defendant's convictions are supported by legally sufficient evidence.
The first and sixth assignments of error are overruled.
 SECOND ASSIGNMENT OF ERROR THE PROSECUTOR ENGAGED IN IMPROPER ARGUMENT IN CLOSING BY INVITING THE JURY TO UTILIZE AN INFERENCE UPON AND [SIC] INFERENCE TO SUPPLY THE DEFICIENCY IN ITS EVIDENCE.
Defendant argues that during closing argument the prosecutor improperly invited the jury to draw inferences based solely and entirely on other inferences in order to find that Defendant possessed crack cocaine and criminal tools when the prosecutor told the jury:
 "If you can answer the question of who threw the gun on the bed, you can answer all of the other questions in this case beyond a reasonable doubt." (T. 409).
Defendant objected, but the court overruled the objection.
The rule against "stacking" inferences, drawing an inference based solely upon another inference, although it is still recognized, has very limited application. It only prohibits drawing an inference based solely and entirely upon another inference, unsupported by any additional facts or inferences drawn from other facts. State v. King (May 17, 1995), Montgomery App. No. 14309, unreported. The rule does not prohibit the use of parallel inferences in combination with additional facts, or drawing multiple, separate inferences from the same set of facts. Id.
The prosecutor's argument did invite the jury to infer that Defendant possessed the crack cocaine and scales found in the residence from his possession of the gun. However, on these facts, his possession of the gun was more in the nature of actual possession than constructive possession, which is inferred. In that event, there is no stacking of inferences. Even if there was such a stacking, there are substantial additional facts, independent of Defendant's possession of the gun, which demonstrate that he possessed the crack cocaine and scales. On that basis, no prohibited stacking of inferences exists. King, supra.
The second assignment of error is overruled.
 THIRD ASSIGNMENT OF ERROR THE APPELLANT'S DUE PROCESS RIGHTS WERE VIOLATED WHEN THE STATE LOST CRITICAL PHOTOGRAPHIC EVIDENCE, FAILED TO NOTIFY THE DEFENSE OF ITS LOSS AND, REPEATEDLY MISLED THE DEFENSE AS TO THE EXISTENCE OF THESE PHOTOGRAPHS.
In an attempt to connect Defendant to the crack cocaine found on the floor behind a dresser in the upstairs bedroom where police discovered Defendant, Det. Daly testified that it appeared to him as though that baggie of crack cocaine had recently been put there because there was no dust or dirt on that baggie, whereas everything else in that bedroom was dusty and dirty. Det. Daly testified that he took Polaroid photographs of that baggie of crack cocaine lying behind the dresser. Defense counsel complained that he was surprised by this testimony because he had specifically requested discovery of all photographs taken, and was told on three separate occasions by the prosecutor and/or the police that no photographs, other than those already disclosed depicting the outside of the residence, existed.
The State responded that it previously had physical possession of the photographs depicting evidence found inside the residence, and that those photographs were shown to Defendant's previous counsel at the motion to suppress hearing, but that the photographs had since been inadvertently lost.
Although Defendant concedes that there was no bad faith on the part of the State in misplacing the photographs, Defendant argues that the State engaged in bad faith by intentionally misrepresenting and misleading the defense concerning the existence of these photographs in a deliberate attempt to circumvent Brady's requirement that exculpatory evidence be disclosed. Brady v. Maryland (1963), 373 U.S. 83. According to Defendant, that violated his due process right to a fair trial. Thus, Defendant argues, the trial court should have granted either his motion for a mistrial or his motion that the jury be instructed to presume that the lost photographs were adverse to the State. Both motions were overruled.
Absent bad faith on the part of the State, its failure to preserve potentially useful evidence does not constitute a denial of due process of law. Arizona v. Youngblood (1988), 488 U.S. 51; State v. Burke (1995),73 Ohio St.3d 399 . Defendant concedes that there was no bad faith on the part of the State in losing or misplacing the photographs. However, the State's failure to disclose the existence of those photographs, and its misrepresentations in that regard, presents a more difficult issue.
The State was required by Crim.R. 16(B)(1)(c) to disclose the existence of the photographs and permit the Defendant to inspect them. The State claimed that it had permitted Defendant's prior attorney to inspect the photographs, which thereafter were lost. That appears to have prompted the State to tell Defendant's subsequent trial counsel that no such photographs exist.
The fact that evidence in existence has been lost or misplaced does not mean that it no longer exists. It merely means that the party who once had it no longer has possession, custody, or control of it. That fact does not relieve the party of the duty to disclose its existence, even though the loss was inadvertent. It surely did not permit the State to deny the existence of these photographs when Defendant's trial counsel requested discovery of them.
The trial court was authorized to sanction the State for a discovery violation. Crim.R. 16(E)(3). The Defendant requested a mistrial or, alternatively, that the jury be instructed to presume that the contents of the photographs were adverse to the State. The trial court declined to impose those sanctions. We see no abuse of discretion because, on this record, neither sanction was warranted.
A mistrial required some showing of prejudice that resulted from the State's conduct, and none was shown. It is unknown whether the lost photographs depict dust or dirt on the baggie of crack cocaine found behind the dresser, which therefore could make them exculpatory in character and useful to rebut Det. Daly's testimony. The requested instruction required some showing that the content of the lost photographs was adverse to the State, and there was no such showing. Neither was it improper for the trial court to refuse to instruct the jury to presume that the lost photographs were adverse to the State, absent some showing of bad faith on the State's part in losing or destroying that evidence. See: State v. Fitzpatrick (March 7, 1997), Montgomery App. No. 16008, unreported., Defendant's remedy for any surprise that resulted from the State's conduct was to request a continuance, and none was requested. His remedy for the loss of the photos was to argue that the State had purposely concealed their existence, suggesting that if produced they might have undermined Officer Daly's testimony about the condition of the baggie of cocaine he found behind the dresser. No such argument was made., Defendant also argues that the State's conduct amounts to a Brady violation. However, without the photographs or any proof of what they depicted concerning the condition of the baggies, it is not possible to find that they were exculpatory in character.
The third assignment of error is overruled.
 FOURTH ASSIGNMENT OF ERROR THE COURT ERRED BY FAILING TO GRANT A MISTRIAL FOR THE REPEATED VIOLATION OF ITS ORDER FORBIDDING THE STATE FROM REVEALING IRRELEVANT BUT PREJUDICIAL INTELLIGENCE MATERIAL.
Prior to trial the court prohibited the State from eliciting any testimony regarding the intelligence information police had gathered and used to obtain the search warrant. When one officer began testifying at trial regarding the safety concerns officers had in executing the search warrant, the fact that a "raid plan" was developed and the SWAT team was involved, Defendant objected and moved for a mistrial. The trial court denied the motion for a mistrial. However, the court sustained Defendant's objection and gave a curative instruction to the jury to disregard the testimony about raid plans and safety concerns. The court also cautioned the prosecutor that it would not allow any further references to general safety concerns.
Subsequently, when two other officers testified that their general duties included patrolling high crime/high drug activity areas and serving drug search warrants, Defendant again objected and moved for a mistrial. The trial court once again denied the mistrial. The court offered to give another curative instruction to the jury, to the effect that an officer's assignment to patrol high crime/high drug activity areas, the fact that this residence is located in such an area, and the use of the SWAT team to execute the search warrant in this case, are not evidence of Defendant's guilt and may not be considered by the jury. That instruction was later given by the trial court during its final charge to the jury. Moreover, the trial court admonished the prosecutor that no further witnesses were to refer to high crime/high drug activity areas., Defendant argues that because of repeated references by the officers to their safety concerns in executing this search warrant, and their suggestion that this residence was located in a high crime/high drug activity area, the trial court's curative instructions to disregard this testimony were insufficient to cure the prejudice, and that the court erred in not granting Defendant a mistrial. We disagree.
The jury was required to determine in this case whether Defendant possessed the crack cocaine, the scales, and the gun discovered in this residence when police searched it pursuant to a warrant. The "safety" issues that the State's witnesses addressed, and their suggestion that this residence was located in a "high crime/high drug activity area," were not probative of the issues to be decided by the jury, and were irrelevant to Defendant's guilt or innocence. To the extent that testimony concerning those matters was elicited by the prosecutor's "background" questions, the questions themselves were improper. Defendant did not specifically object to the nature of the questions, only the answers. The only remedy for the answers, other than a mistrial, were the curative instructions the trial court gave. The jury is presumed to follow the trial court's instructions. State v. Goff (1998),82 Ohio St.3d 123.
We are not convinced that the answers the State's witnesses gave to the prosecutor's "background" questions were so prejudicial of Defendant's right to a fair trial that the trial court abused its discretion when it denied Defendant's motions for a mistrial. There was no dispute that drugs, criminal tools and a gun were found in the residence. The only question was whether Defendant possessed those items. The witnesses' recitations about safety concerns and high crime/high drug activity areas* do little to connect Defendant to those items. Whatever connection said testimony might provide was addressed by the curative instructions the trial court gave. We do not agree that another curative instruction, which the Defendant declined, would have been harmful to Defendant. Those instructions may well have worked against the State.
The fourth assignment of error is overruled.
 FIFTH ASSIGNMENT OF ERROR THE COURT ERRED BY INSTRUCTING THE JURY ON AN UNCHARGED CRIME.
Defendant was found guilty of violating R.C. 2923.24, which provides in relevant part:
 (A) No person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally. * * *
 (C) Whoever violates this section is guilty of possessing criminal tools. Except as otherwise provided in this division, possessing criminal tools is a misdemeanor of the first degree. If the circumstances indicate that the substance, device, instrument, or article involved in the offense was intended for use in the commission of a felony, possessing criminal tools is a felony of the fifth degree.
With respect to the criminal tools charge, the indictment charged Defendant as follows:
SECOND COUNT:
 AND the grand jurors of this County, in the name and by the authority of the State of Ohio, upon their oaths do find and present that: LAWRENCE DANNIN MADDOX, AKA: LAWRENCE DANA MADDOX, on or about the 5th day of March, 1999, in the County of Montgomery, aforesaid, and State of Ohio, did possess or have under his control any substance, device, instrument or article, to-wit: Electronic Scale, with purpose to use it in the commission of a felony; contrary to the form of the statute (in violation of Section 2923.24(A) of the Ohio Revised Code.
In instructing the jury on the possession of criminal tools charge, the trial court recited the language of the applicable statute. The trial court additionally stated that if the jury found Defendant guilty of that offense, they must separately decide whether the State has proven beyond a reasonable doubt that "Defendant intended to use the device or instrument to commit the felony of trafficking in crack cocaine." The court then defined the elements of that offense per R.C. 2925.03(A)(1). Defendant objected to that instruction, arguing that he was not charged with that crime, trafficking in crack cocaine, or given notice of it. Defendant now argues that the trial court erred in instructing the jury on an uncharged crime. We disagree.
The trial court did not err when it instructed the jury that the unspecified felony offense which it was Defendant's purpose to commit by possessing criminal tools, an electronic scales, was trafficking in crack cocaine. The evidence would reasonably permit the jury to find beyond a reasonable doubt that that was the underlying felony offense. Moreover, the indictment was not defective because it failed to specify that offense.
The indictment employed the words of the applicable statute, R.C.2923.24(A), (C), as authorized by Crim.R. 7(B). The allegation that Defendant possessed the instrument or device with purpose to use it in the commission of a felony offense was sufficient to reasonably inform Defendant of the crime with which he was charged. State v. Bonilla (March 2, 2001), Greene App. No. 99CA0118, unreported. The allegations in the indictment unquestionably charge an offense, and apparently gave Defendant sufficient notice of the alleged crime because a bill of particulars was never requested. Id.
As the trial court pointed out, if Defendant was in any way hampered by the failure of the indictment to specify what the underlying felony offense was, or desired to confine the State's case to that offense which it might identify, Defendant's remedy was a bill of particulars, which he never requested. Given that Defendant raised no issue prior to trial as to the adequacy of his notice, and given defense counsel's comment during his opening statement that the issue in this case was whether Defendant was aware of the cocaine and intended to use the scales to make a profit, nothing in this record suggests that Defendant was hampered by the instruction the court gave or the content of the indictment.
The fifth assignment of error is overruled.
 SEVENTH ASSIGNMENT OF ERROR
ALL OF THE ERRORS COMMITTED AT TRIAL COMBINED TO DEPRIVE APPELLANT OF A FAIR TRIAL., Defendant contends that while the errors committed at trial may not have individually been prejudicial, the cumulative effect of all of those errors deprived him of a fair trial. State v. DeMarco (1987),31 Ohio St.3d 191.
We have examined each of the alleged errors Defendant has assigned in this appeal and have found no error in any of the particular claims assigned. Accordingly, Defendant has not been deprived of a fair trial.
The seventh assignment of error is overruled. The judgment of the trial court will be affirmed.
 __________ GRADY, J.
FAIN, J. and YOUNG, J., concur.
* Explanations made in "police-eze" probably offer more comfort to officers who use them than any prejudice to a defendant whom they concern.