OPINION
Defendant, Ali M. Farrah, was indicted on July 14, 2000, and charged with multiple counts of robbery and aggravated robbery. Defendant was tried before a jury which found him guilty of all counts. On August 3, 2001, defendant was sentenced to five years' imprisonment. He now appeals, raising the following four assignments of error:
 I. The trial court abused its discretion when it refused defense counsel the opportunity to call a material witness for the defense.
 II. The trial court abused its discretion when it admitted unauthenticated videotape evidence.
 III. Appellant's trial counsel's failure to timely call a material witness and failure to present closing argument constituted ineffective assistance of counsel.
 IV. Appellant's conviction of Aggravated Burglary was against the manifest weight of the evidence.
Randall Brown testified at trial that on July 7, 2000, he was working as a night cashier at the BP gas station and convenience market located at I-70 and Rome-Hilliard Road. Randall's wife, Jodi, was with him behind the cash registers, although she was not working at the time. According to Mr. Brown, three men entered the store together at about 1:15 a.m. and proceeded toward an ATM machine located at the back of the store. Once they reached the ATM, the three men separated. One went to the beer cooler, one walked out the front door, and the defendant came to the cash counter.
When the defendant reached the counter, he started speaking to Mr. Brown in a foreign language gesturing to what appeared to be a credit card he held in his hand. While the defendant was attempting to engage Mr. Brown in conversation, one of the men removed two cases of beer from the store's cooler. As he did so, Mr. Brown told the man that he could not sell beer after 1:00 a.m. At that moment, the man cursed at him and ran out the door with the beer. The defendant then fled out the door following the man with the stolen beer. Mr. Brown told his wife to call the police and then chased the two across the parking lot. According to Mr. Brown, the defendant and the first individual to leave the store were waiting at their car. When the defendant saw Mr. Brown exit the store, he motioned that he had a firearm, lifting his shirt showing a handle, which Mr. Brown thought looked like the handle of a gun. He backed off, and they picked up the man with the beer up at the south end of the parking lot. The three then fled the scene, followed by Mr. Brown in his own vehicle. Mr. Brown followed the three long enough to get a description of the vehicle and the license number. He then returned to the store, where he relayed to the police a description of the defendant as a heavy-set balding Somalian man, who was wearing a gray tank top. He also told the responding officer that the three fled in a dark blue 1992 Chevrolet Cavalier.
The second witness to testify at defendant's trial was Jodi Brown. Mrs. Brown explained that she was behind the counter with her husband at the time of the robbery. She also observed the three men enter the store and approach the ATM. According to Mrs. Brown, almost immediately after they reached the ATM, the three separated. Defendant came to the counter complaining the machine was not working, one turned and walked back out of the store, and the other removed beer from the cooler. She then confirmed that her husband told the third individual that there were no beer sales, and that the suspect carrying the beer cursed at him and ran out the door. As her husband followed the group, she placed a 911 call. Finally, she also positively identified the defendant in court as the individual at the counter that evening.
The third witness called by the prosecution was Columbus Police Officer Rodney J. Butcher. Officer Butcher briefly testified that he responded to Mrs. Brown's 911 call, secured the scene, and began his investigation including airing a description of the individuals, their vehicle, and a license plate number. He explained that he took a report from both Randall and Jodi Brown, and corroborated the description of the defendant.
The next witness called by the state was Columbus Police Officer Bruce Townsley. Officer Townsley arrived at the scene of the robbery shortly after Officer Butcher. He testified that while he was interviewing Mr. and Mrs. Brown, he received a call that Columbus Police Officer Jerome Collins spotted the suspects' vehicle in the parking lot of an apartment complex located behind the Sullivant Gardens. Shortly thereafter, Officer Townsley transported Mr. Brown to the area so that he could view several individuals who had been detained.
Before his testimony concluded, Officer Townsley was shown a videotape taken by the store's security camera during the robbery and was asked to verify that the tape accurately depicted the scene of the crime.[1]
Officer Townsley stated that he had been inside the store on several occasions, and that the video accurately depicted how the store looked at the time of the robbery. Finally, Officer Townsley verified that he took custody of the tape during the course of his investigation.
Officer Jerome Collins was also called to testify. When questioned, Officer Collins recounted that he had located the suspects' vehicle parked at 780 Greenfield, in an apartment complex located behind the Sullivant Gardens. According to his testimony, the car was surrounded by a large group of people drinking beer. When he and several other officers approached the group, the members of the group ran in different directions. Eight were eventually apprehended and detained so that they could be identified. One of those individuals was Zakaryia Mohammed, one of the defendant's friends.
When Mr. Brown arrived, he looked at each of the detained men, but was unable to positively identify any of them. However, before this had concluded, the defendant came out of an apartment and walked toward the police to see what was going on. Mr. Brown made a positive identification as soon as he saw the defendant. Mr. Brown testified:
 Q. * * * Sir, you said you saw my client come out of an apartment building, is that right?
A. Yes, sir.
 Q. He wasn't part of the group of people that the police had you look at, right?
A. No, sir.
* * *
 A. He walked out smoking a cigarette, and I said, "There's the gentleman right there." [Tr. 26.]
As soon as Mr. Brown identified the defendant, Officer Collins detained the defendant and searched him, finding a five-inch box cutter with a black rubber handle in his possession. Officer Collins took the knife, put it in his waistband, and then approached Mr. Brown. When seeing this, Mr. Brown stated that the knife was what he initially thought was the handle of a gun. Officer Collins then placed the defendant under arrest.
After the state concluded the presentation of its case, defendant called Zakaryia Mohammed to the stand. Mohammed testified that he and the defendant were best friends and that he had just arrived from Atlanta, Georgia, to visit the defendant on the evening of the robbery. After the defendant came home from work, he and Mohammed went to the BP station because Mohammed wanted to buy cigarettes with his "Anytime" card. When asked about the robbery, Mohammed claimed that there was someone already in the store when he and the defendant arrived, and that this individual was the one who stole the beer. He claimed that he did not know this person and that after the robbery he and the defendant simply left and returned to the defendant's home because he was unable to make a withdrawal from the ATM located in the BP store. When questioned about the third individual, Mohammed claimed to not know his name, and also claimed that he did not enter the store, but waited in the car. He also denied seeing anyone standing around their car drinking beer when he was apprehended and detained by the police after the robbery.
The last witness to testify was the defendant, who took the stand in his own defense. According to the defendant, the evening began when he left work at 11:30 p.m. and went home to meet Mohammed. The two then went looking to buy cigarettes. When asked why they had traveled such a great distance only to buy cigarettes, defendant claimed they went to the BP on Hilliard-Rome Road because his neighborhood is small and does not have an ATM machine. When asked about other local stores, he claimed that they all closed by midnight.
Defendant stated that he, Mohammed, and his friend Weili Norr drove to the BP that night. Although Mr. Brown followed the three after the robbery and claimed they were traveling in a dark blue Chevrolet, defendant claimed that they were traveling in a black Honda Accord. Paralleling Mohammed's testimony, defendant testified that when they arrived, he and Mr. Mohammed purportedly exited the vehicle and went inside, while Norr waited in the car.
Defendant claimed to have been standing at the counter when the thief ran out of the store. He denied knowing this individual and also denied leaving the crime scene with him. Defendant also denied making any motions or gestures to Mr. Brown while in the parking lot, and claimed to have just returned home after the robbery, leaving the store without having purchased cigarettes. Defendant specifically denied displaying a knife or threatening Mr. Brown in any manner. When questioned why he left the scene, he explained that he did so because the police might think he committed the robbery. He had no explanation why Mr. and Mrs. Brown would have falsely identified him, or why Mr. Brown would follow their vehicle when the thief allegedly left the parking lot on foot. He was also unable to explain how Mr. Brown knew that he had in his possession what turned out to be a knife, which resembled the handle of a pistol.
In his first assignment of error, defendant argues that the trial court abused its discretion when it refused to allow him to reopen the case in order to call an additional defense witness. After the prosecution had presented its case, and the day after the defense rested, defense counsel announced that he planned to call Weili Norr as an additional defense witness. Defendant had not listed Norr as a potential witness during discovery, and the following objection and dialogue was held on the record:
 [Prosecutor] This morning I was handed a note from [defense counsel]: "Weili Norr is here. I'm planning on calling him as a witness."
 The State would object. There has been no notice of this witness until two minutes before closing. There's been no time to investigate him on his background, his criminal record. In addition, it's my understanding he told me that he's going to testify that he was the driver of the car.
* * *
 [Defense counsel] Thank you, Your Honor. I didn't know this gentlemen's name until yesterday right before my client was to testify. * * * I found out his name yesterday. At the close of the case yesterday, my client said he would bring Mr. Norr to court today. * * *
 [The Court] As I understand it, the Defendant has known who the driver was since July 7th of 2000.
* * *
 It seems to me, this is information that the Defendant has had since the date of this offense. I understand that there have been a number of attorneys that were representing him, but it seems to me that this is something that he could have provided long ago and not at the close of the defense case.
 In fact, when we concluded yesterday, we indicated to the jury that we were finished. I think I asked, in fact, if Counsel for the State was going to have any rebuttal testimony. It seems to me this is pretty late in the game for him to be called as a witness in this case, and I think the Court is not going to permit him to testify. [Tr. 215-219.]
The admission or exclusion of relevant evidence rests within the sound discretion of the trial court, as does the court's ruling upon evidentiary objections. State v. Robb (2000), 88 Ohio St.3d 59, 68, quoting State v. Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus. Absent an abuse of discretion, as well as a showing that the accused has suffered material prejudice, an appellate court will not disturb a ruling by a trial court as to the admissibility of evidence. State v. Martin (1985), 19 Ohio St.3d 122, 129. An abuse of discretion connotes more than an error of law or judgment and implies that the court's attitude is clearly and palpably unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
Under the circumstances, defendant has not shown that the trial court acted in a clearly unreasonable, arbitrary, or unconscionable manner. It is undisputed that the defendant concealed this witness, apparently even from his own attorney, only to surprise opposing counsel with his attempt to reopen the case after both parties had rested. At an absolute minimum, defendant failed to comply with the discovery rules, and there is no doubt that the prosecutor was surprised when she learned of the defendant's wish to call this witness after the defendant had rested his case. The defendant allowed the prosecutor no time to interview this witness or to do any reasonable investigation. Moreover, the prosecutor's case had been planned and executed without any knowledge of this individual. Finally, the defendant had numerous meetings with his attorney over a period of nine months prior to trial, yet failed to disclose the identity of the driver of the car until immediately before he testified. In light of the foregoing, we believe the trial court was justified in preventing the defendant from calling this witness. Accordingly, defendant's first assignment of error is overruled.
In his second assignment of error, defendant maintains that the security videotape taken at the time of the robbery was not properly authenticated.[2] Evid.R. 901(A) provides, as follows:
 The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.
The rule continues, explaining that testimony of a witness with knowledge that a matter is what it is claimed to be, conforms with the requirement of the rule. Evid.R. 901(B)(1).
The requirement of authentication is satisfied when a proponent presents foundational evidence or testimony from which a rational jury may determine that the evidence is what its proponent claims it to be. Andrews v. Riser Foods, Inc. (Oct. 16, 1997), Cuyahoga App. No. 71658, unreported; Hall v. Johnson (1993), 90 Ohio App.3d 451; and State v. Isley (June 26, 1996), Summit App. No. 17485, unreported. "The proponent need not offer conclusive evidence as a foundation but must merely offer sufficient evidence to allow the question as to authenticity or genuineness to reach the jury." Id. Additionally, in the case of photographs, it is not necessary to show who took the photograph or when it was taken provided there is testimony that the photograph is a fair and accurate representation of what it represents. Andrews, supra, citing State v. Brooks (1995), 101 Ohio App.3d 260, 264.
In this case, Mr. Brown testified that he called the manager of the store who turned over the videotape to Officer Townsley after the robbery. When questioned about the subject of the tape, Officer Townsley stated:
Q: And you were inside the BP store that night?
A: Yes, I was.
Q: Have you been there on any other occasions?
A: A couple of times.
 Q: As you're watching this, does it accurately depict how the store looked that night?
A: Yes, it does.
Q: Is that where the counter is?
A: Yes.
Q: Is that where the counter always has been?
A: Yes. [Tr. 66.]
Again, we note that the decision to admit or exclude relevant evidence is left to the discretion of the trial court. Sage, supra. When applying the abuse of discretion standard, a reviewing court may not substitute its judgment for that of the trial court unless the court abuses its discretion. Berk v. Matthews (1990), 53 Ohio St.3d 161, 169. A finding that a trial court abused its discretion is justified only when the trial court acts unreasonably, arbitrarily or unconscionably. Blakemore, supra, at 219. In this case, the testimony presented was sufficient to support a finding that the videotape was genuine, and accurately depicted the store at the time of the robbery. Accordingly, defendant's second assignment of error is overruled.
In his third assignment of error, defendant argues that he received ineffective assistance of trial counsel. Specifically, defendant condemns trial counsel for his failure to call Weili Norr, his failure to present evidence of a purported jailhouse confession, and for his decision to waive closing argument.
In order to demonstrate that he has been denied the effective assistance of trial counsel, defendant must first show that trial counsel violated one or more of his or her essential duties owed to the defendant. Strickland v. Washington (1984), 466 U.S. 668, 687; State v. Bradley (1989), 42 Ohio St.3d 136. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, supra. Second, defendant must show that counsel's performance caused him harm. In order to demonstrate harm, defendant must show that there "exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." Bradley, supra, paragraph two of the syllabus. As the United States Supreme Court held in Strickland, "[t]his requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction * * * resulted from a breakdown in the adversary process that renders the result unreliable." Id. at 687.
A properly licensed attorney is presumed competent. In State v. Frazier (1991), 61 Ohio St.3d 247, the Ohio Supreme Court explained:
 * * * [T]he Strickland court strongly cautioned courts considering the issue of ineffective assistance of counsel that "[j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. * * * Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'" [Id. at 253, quoting Strickland, supra, at 689.]
It is not ineffective assistance of counsel when counsel chooses, for strategical reasons, not to pursue every possible trial tactic. State v. Brown (1988), 38 Ohio St.3d 305, 319. The fact that counsel chose one strategy and that there was another, or better, strategy available does not amount to a breach of an essential duty to the defendant. Stated alternatively, counsel's strategic decisions and trial tactics will not support a claim of ineffective assistance. State v. Clayton (1980),62 Ohio St.2d 45, 48-49.
As the United States Supreme Court recognized, "[t]here are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." Strickland, supra, at 689. The question is whether counsel acted "outside the wide range of professionally competent assistance." Id. at 690. The goal of this inquiry is to determine whether the defendant received a fair trial "not to improve the quality of legal representation" in hindsight. Id. at 689.
In State v. Burke (1995), 73 Ohio St.3d 399, the Ohio Supreme Court recognized that the waiver of closing argument to the jury does not ipso facto constitute ineffective assistance of counsel, and that the waiver might simply constitute a matter of trial strategy. Id. at 404-405. See, also, State v. Apanovich (1987), 33 Ohio St.3d 19, 24 (waiver of closing for what appeared to be tactical reasons). Having reviewed the matter, we are unable to conclude that the performance of defendant's trial counsel fell below an objective standard of reasonable representation, or that defendant was materially prejudiced by counsel's alleged substandard performance. Under the circumstances, we do not believe that counsel's decision to forego closing argument to the jury was either clearly unreasonable, or that a reasonable probability exists that defendant would have been acquitted but for counsel's failure to make a closing argument.
As for counsel's alleged failure to timely call Weili Norr as a witness, the record shows that the defendant kept the identity of this witness from his attorney until just before he took the stand as the last witness to testify. Therefore, we cannot blame defendant's attorney for allegedly failing to call this witness in a timely fashion. Indeed, as we noted earlier, counsel did, in fact, attempt to call this individual but was prevented from doing so by the court.
Finally, defendant claims that counsel failed to present evidence of an alleged confession by Shakura Rayse. However, counsel specifically questioned the defendant about this alleged confession during the course of his direct examination. Trial counsel asked:
 Q: Does the name — I'm going to have to spell it for you Shakura Rayse * * * sound familiar?
 A: He signed the paper. I show my lawyer. He said, "I did it. Ali, don't tell me. Don't snitch. Don't tell me." I don't know who he is.
 Q: You received a piece of paper when you were in jail from this man?
A: Yeah.
Q: And that's the first time you knew his name?
A: Yeah.
Q: He admitted to you he took the beer?
A: Yeah.
Q: But you didn't know his name until that time?
A: I don't know. I don't know many people. [Tr. 162.]
Moreover, in support of his appeal, defendant notably fails to offer any evidence that this alleged note or individual exists. Having carefully reviewed the record, we are unable to conclude that trial counsel made errors so serious that counsel was not functioning as counsel guaranteed by the Sixth Amendment. Strickland, supra. Therefore, defendant's third assignment of error is overruled.
In his fourth assignment of error, defendant maintains that his conviction is against the manifest weight of the evidence. When reviewing a verdict challenged to be against the manifest weight of the evidence, we must examine the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether in resolving conflicts in the evidence the trier of fact clearly lost its way and, further, created such a manifest miscarriage of justice that the judgment or conviction must be reversed.
In State v. Thompkins (1997), 78 Ohio St.3d 380, the Ohio Supreme Court explained:
 * * * Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." [Black's Law Dictionary (6 Ed. 1990), 1594.]
 When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. [Emphasis sic.; id. at 387.]
In State v. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387, unreported, this court explained that when reviewing a conviction challenged on the basis of the manifest weight of the evidence, the evidence is not construed most strongly in favor of the state, and the appellate court must engage in a limited weighing to determine whether there is sufficient competent, credible evidence to permit reasonable minds to find guilt beyond a reasonable doubt. Id. citing State v. DeHass (1967), 10 Ohio St.2d 230 . In other words, a reviewing court will not reverse a conviction where there is substantial evidence upon which the court could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt. Id.
Based upon a careful review of the record, we find that the evidence presented at trial was sufficient to support a finding by a rational trier of fact that all of the essential elements of robbery and aggravated robbery had been proven beyond a reasonable doubt. The dispositive issue is whether the evidence properly supports the defendant's identification as one of the perpetrators of this crime. Upon a thorough and careful review of the record, we find that it does.
Randall Brown testified that the defendant entered the store with two other individuals and proceeded directly to the ATM machine at the back of the store. When the three reached the machine they immediately split, and the defendant approached the counter and attempted to engage him in a conversation in a foreign language. At the same time, one of the individuals left the store, and the other removed two cases of beer from the cooler. Mr. Brown attempted to explain to the defendant's accomplice that beer sales had ceased for the evening; however, as he did so, that person fled the store. The defendant followed the thief out of the store and into the parking lot pursued by Mr. Brown. Outside the store, the defendant gestured like he had a firearm pointed at Mr. Brown and lifted his shirt showing a black object tucked in the waistband of his pants. According to Mr. Brown's testimony, the three then left the scene in a dark blue Chevrolet Cavalier. These facts were corroborated at trial by Mr. Brown's wife.
The evidence also showed that the vehicle matching the description and license plate given to police by the Browns was located shortly after the description of the vehicle and suspects had been aired. The testimony of the responding police officers was that a large group of individuals were gathered around the car drinking the same brand of beer stolen from the BP. Although the members of the group ran when approached by police, eight were detained in order to be identified by Mr. Brown. All of the testimony showed that Mr. Brown was transported to the location of the vehicle and identified the defendant as soon as he saw the defendant approach. When the defendant was apprehended, he had a black-handled five-inch knife on his person. Mr. Brown identified the knife as the object shown to him by the defendant, and which he thought was a firearm.
In response to the eyewitness identification and corroborating evidence, defendant offered the testimony of himself and his best friend. However, both he and his best friend had a strong motive to lie. On the other hand, there seems to be no reason why Mr. and Mrs. Brown would lie about the robbery, or how Mr. Brown would have known that the defendant had a black-handled weapon in his possession. Moreover, defendant's explanation that he had driven ten miles only to get to an ATM to buy cigarettes was suspect. A conviction is not against the manifest weight of the evidence merely because the trier of fact may have heard inconsistent testimony. State v. McVay (Sept. 30, 1999), Franklin App. No. 98AP-1246, unreported, discretionary appeal not allowed (2000),87 Ohio St.3d 1492.
The reversal of a conviction as being against the manifest weight of the evidence is an act reserved for only the most "exceptional case in which the evidence weighs heavily against the conviction." Thompkins, supra, at 387. In the present case, as in any other case, it was for the trier of fact to judge the credibility of the witnesses and evidence and to give appropriate weight to each. DeHass, supra. Having carefully and closely reviewed the entire record, and having independently weighed the evidence and judged the credibility of the witnesses, we are unconvinced that the jury clearly lost its way. Accordingly, defendant's fourth assignment of error is overruled.
For the foregoing reasons, all four of defendant's assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
LAZARUS, J., concurs.
TYACK, P.J., concurs separately.
[1] The videotape did not depict the beer theft, which occurred off camera.
[2] According to testimony, the videotape was actually a series of still images much like photographs.