OPINION
{¶ 1} John Q. Dunlap, defendant-appellant, appeals a judgment of the Franklin County Court of Common Pleas, in which the court found him guilty of attempted burglary, in violation of R.C. 2923.02 as it relates to R.C. 2911.12, a fifth-degree felony; improper discharge of a firearm at or into a habitation or in a school safety zone with specifications for the use of a firearm and the discharge of a firearm from a motor vehicle, in violation of R.C. 2923.161, a second-degree felony; failure to comply with an order or signal of a police officer, in violation of R.C. 2921.331, a fourth-degree felony; and having a weapon while under disability, in violation of R.C. 2923.13, a fifth-degree felony.
 {¶ 2} The victim, Cheryl Hairston, was involved in a relationship with appellant for several years, ending in December 2001. She testified that, on February 26, 2002, she was in her home and received a phone call from appellant, who was talking on a cell phone. He was angry and indicated he was on his way to her house. He later called again and said he was on her front porch. Cheryl said that, while she was attempting to call 911, appellant began kicking her door, jamming it so it could not be opened or closed. Appellant left, and she lay down on the couch. After some hours passed, Cheryl said she heard a "whooshing" sound, and then her brother, Richard Hairston, another man, and the police knocked on her back door. They told her that shots had been fired at her house. A .32-caliber slug was found inside her home.
 {¶ 3} Richard, who lived next door to Cheryl, testified that, in the early morning hours of February 27, 2002, he heard gunshots and saw appellant's van in an alley next to Cheryl's house with the barrel of a rifle pointing out the window. The van moved into another position, and Richard heard more shots. He could see appellant in the van because the dome light came on at one point. He alerted police by pushing the panic button on his alarm system.
 {¶ 4} After police arrived at Cheryl's, Hairston pointed them in the direction in which appellant had just driven away. The police spotted appellant's van, but appellant refused to stop. A car chase ensued, during which two officers said they saw appellant throw out a .22-caliber rifle. A foot chase commenced, and appellant was apprehended with .22 and .32 caliber rounds in his pockets. Ammunition was also found in his van.
 {¶ 5} Appellant was charged with attempted burglary, improper discharge of a firearm at or into a habitation with specifications alleging the use of a firearm and the discharge of a firearm from a motor vehicle, failure to comply with an order or signal of a police officer, and having a weapon while under disability. Appellant waived his right to a jury trial, and a bench trial was commenced on February 26, 2003. Cheryl, Richard, and eight Columbus police officers testified on behalf of the state. Appellant testified on his own behalf. Appellant was found guilty of all counts and specifications. The trial court sentenced appellant to three years' incarceration for the discharge of a firearm at or into a habitation, to be served consecutively to a mandatory three-year term for the use of the firearm and consecutively to a five-year term for discharging the firearm from a motor vehicle. The trial court also imposed concurrent terms of incarceration of 12 months, 11 months, and 11 months on the failure to comply with an order or signal of a police officer, attempted burglary, and having a weapon under disability counts, respectively. Appellant appeals the trial court's judgment, asserting the following two assignments of error:
First Assignment of Error: Appellant received ineffective assistance of counsel.
Second Assignment of Error: Appellant's convictions were not supported by the evidence and was [sic] against the manifest weight of the evidence.
 {¶ 6} We will address appellant's second assignment of error first. Appellant argues in his second assignment of error that the trial court's judgment was based upon insufficient evidence and was against the manifest weight of the evidence. When determining whether a conviction is against the manifest weight, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. State v. Thompkins (1997),78 Ohio St.3d 380, 387, citing State v. Martin (1983), 20 Ohio App.3d 172.
 {¶ 7} However, when an appellate court reviews a claim that a conviction is not supported by sufficient evidence, its inquiry focuses primarily upon the adequacy of the evidence. Thompkins, at 386. Sufficiency is a term of art that tests whether, as a matter of law, the evidence presented at trial is legally sufficient to sustain a verdict. Id. The standard of review is whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. An appellate court does not weigh credibility when addressing a sufficiency of the evidence claim. See State v. Coit, Franklin App. No. 02AP-475, 2002-Ohio-7356, citing Ruta v. Breckenridge-Remy Co. (1982),69 Ohio St.2d 66, 68-69. A sufficiency of the evidence analysis is a question of law that does not allow courts to independently weigh the evidence. Martin, supra, at 175. Evaluations of weight and credibility are jury issues. State v. Hill (1996), 75 Ohio St.3d 195, 205.
 {¶ 8} Appellant's arguments under this assignment of error relate only to the attempted burglary count and improper discharge of a firearm at or into a habitation count, as appellant's trial counsel "stipulated" to the failure to comply with an order or signal of a police officer and having a weapon while under disability counts during trial. With regard to the attempted burglary count, R.C. 2911.12 provides, in pertinent part:
(A) No person, by force, stealth, or deception, shall do any of the following:
* * *
(4) Trespass in a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present.
 {¶ 9} Further, R.C. 2923.02 defines the offense of attempt in the following manner:
(A) No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense.
 {¶ 10} With regard to the improperly discharging a firearm at or into a habitation or school safety zone, R.C. 2923.161 provides, in pertinent part:
(A) No person, without privilege to do so, shall knowingly do any of the following:
(1) Discharge a firearm at or into an occupied structure that is a permanent or temporary habitation of any individual[.]
 {¶ 11} We will first address the attempted burglary charge. Cheryl testified that appellant called her on his cell phone angry and said that he was coming over to her home and was going to come in whether she let him in or he had to kick the door in. When he arrived, he called her on his cell phone again and then kicked her door. The deadbolt stopped the door from opening, and the door jammed. Appellant then left. Appellant denied any of these events happened. After viewing this evidence in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that, appellant by force, attempted to trespass in Cheryl's habitation when she was present or likely to be present. Thus, there was sufficient evidence to support the verdict.
 {¶ 12} We also find the verdict finding appellant guilty of attempted burglary was not against the manifest weight of the evidence. Appellant testified that he did not kick the door in and attempt to break into the house. He said he had a key to the house and had some personal possessions in the house. Cheryl testified that appellant never had a key to her house. Appellant is basically asking this court to believe his version of the events over Cheryl's version. However, questions of weight and credibility are primarily for the trier of fact. State v. DeHass
(1967), 10 Ohio St.2d 230, paragraph one of the syllabus; State v.Garrow (1995), 103 Ohio App.3d 368, 371. The court apparently found credible Cheryl's testimony that appellant said he was going to come over and come inside even if he had to break the door down, and that appellant actually did come over and kick the door in to attempt to gain entry. We refuse to second guess the trial court's determination of Cheryl's and appellant's credibility when it was able to see and hear them firsthand To do so on this record would be an inappropriate usurpation of the trier of fact's role. After reviewing the entire record, weighing the evidence and all reasonable inferences, we find that the trier of fact did not clearly lose its way and create such a manifest miscarriage of justice that the conviction for attempted burglary must be reversed and a new trial ordered. Thus, appellant's conviction for attempted burglary was not against the manifest weight of the evidence.
 {¶ 13} With regard to the improper discharge of a firearm at or into a habitation, Cheryl testified that she heard a whooshing sound as she lay on her couch after appellant had tried to kick in her door. She then found bullet holes in her window, ceiling fan, wall, and couch about one foot from where her head had been resting. She denied owning a gun or giving appellant a gun to repair. Her brother, Richard, testified that, at about 1:00 am, he was in his bedroom across the street from Cheryl's house and heard gunshots. He saw appellant's van in the alley next to Cheryl's house with its headlights off, and the barrel of a rifle was pointing out the van window. After firing three shots, he went to an alley and shot four more times. Richard testified that appellant opened the van door, the dome light came on, and he saw a clear view of appellant alone in the van. Nobody else was in the alley or near Cheryl's house.
 {¶ 14} Eight Columbus police officers also testified. Officer Jack Morris testified that, after responding to a call about a man in a white van with a gun, he heard shots fired in the vicinity. He spotted appellant's van and tried to stop it, but it sped away, and a chase ensued. Officer Andrew Ross testified that, while responding to the call about a man in a white van with a shotgun, he heard several gunshots, and then saw a van in the alley by Cheryl's house. He followed the van, and after he observed it commit a traffic violation, he attempted to pull over the van. The van sped away recklessly and he pursued. Officer George Bragalone testified that he responded to a pursuit call, and began chasing a white van with two other cruisers. He observed the driver of the white van throw a Mossberg .22-caliber rifle out of the van window. He stopped and retrieved the rifle. Officer Timothy Dorn testified that he photographed bullets found in appellant's pocket and a rifle thrown from his van. He also photographed two .22-caliber rifle bullets on appellant's front driver's seat and several bullet holes in Cheryl's home. He said it was possible the holes in Cheryl's house were old.
 {¶ 15} Officer Jason Bolt testified that, after the other officers began chasing the van, he also began pursuit. The white van was being operated recklessly. He observed a rifle being thrown from the van. After appellant jumped out of the van, Officer Bolt started chasing him on foot. He and another officer eventually caught appellant, and a struggle ensued until they could handcuff him. Officer Amy Ramsey testified that she began chasing the white van with other cruisers. After appellant bailed out of the van, she began pursuing him on foot. She eventually caught appellant and wrestled with him. Officer Jason Arnold said he responded to a dispatch and, after arriving in the area, heard gunshots. He saw the van, and a stop was attempted, but the van sped off erratically. After other officers apprehended appellant, he found one of appellant's pockets full of .22-caliber rounds, and the other pocket had four .32-caliber rounds. Detective Timothy Huston investigated the incident and learned that the spent slug in Cheryl's home was a .32-caliber slug. Tests could not eliminate the .32-caliber slug as being the same make as the .32-caliber live rounds found with appellant. He did not believe a gun residue test on appellant's hands was completed.
 {¶ 16} Appellant testified that he never fired at Cheryl's home on the night in question. He said the .22-caliber Mossberg rifle thrown out of his van belonged to Cheryl, who had given it to him to repair. He admitted throwing the rifle out of the van. He said he had no idea where the .22-caliber rounds found on his driver's side car seat came from. He also did not know "how in the world" the .22 or .32-caliber rounds ended up in his pocket.
 {¶ 17} Again, appellant's manifest weight argument raises mainly a question of credibility. Richard testified that he clearly saw appellant fire approximately seven times at Cheryl's residence from his van. Richard did not see anyone else in the van or near the house. The police found both .22 and .32-caliber rounds in his pockets. A .32-caliber slug was found in Cheryl's home. Numerous police officers saw appellant in his white van near the scene of the crime and chased him, during which time he admittedly threw a .22-caliber rifle out of the van window. Appellant's only defense was that he did not do it. The trial court's verdict shows that it found Richard, Cheryl, and the police officers to be credible witnesses. The case hinged almost entirely upon credibility. We again refuse to second guess the court's determination of the witnesses' credibility when the court was able to see and hear the witnesses. Further, although a .32-caliber rifle matching the .32-caliber slug found in Cheryl's house was never found, such does not negate the substantial eyewitness testimony and circumstantial evidence. After reviewing the entire record, weighing the evidence and all reasonable inferences, we find that the trial court did not clearly lose its way and create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Thus, appellant's conviction for improperly discharging a firearm at or into a habitation was not against the manifest weight of the evidence. Therefore, appellant's second assignment of error is overruled.
 {¶ 18} Appellant argues in his first assignment of error that his trial counsel was ineffective. In order to prevail on an ineffective assistance of counsel claim, appellant must meet the two-prong test enunciated in Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052; State v. Bradley (1989), 42 Ohio St.3d 136. The first prong requires appellant to show that counsel's performance was deficient. To meet that requirement, appellant must show counsel's error was so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Counsel's conduct may be proven deficient by identifying acts or omissions that were not the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. Id. at 690. In analyzing the first prong of Strickland, there is a strong presumption that defense counsel's conduct falls within a wide range of reasonable professional assistance. Id. at 689. Appellant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. Id., citing Michel v. Louisiana (1955), 350 U.S. 91,101, 76 S.Ct. 158.
 {¶ 19} If appellant successfully proves that counsel's assistance was ineffective, the second prong of the Strickland test requires appellant to prove prejudice in order to prevail. Id. at 687. To meet that prong, appellant must show counsel's errors were so serious as to deprive him of a fair trial, a trial whose result is reliable. Id. at 687. This standard is met by showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, at 694.
 {¶ 20} Appellant indicates seven actions or inactions he claims constituted ineffective assistance of counsel, and we will address each in turn. Appellant first claims his counsel was ineffective in asking Cheryl if she had ever had conversations with appellant's wife, thus revealing that his and Cheryl's relationship was adulterous. However, as the state points out, the trial court was already aware that appellant was married because his wife wrote to the trial court on December 20, 2002, and referred to appellant's relationship as an extramarital affair "gone badly." Thus, no prejudice can be shown. Also, it may have been trial strategy to elicit such information, given Richard presumably knew appellant was married and may have revealed such during his testimony after Cheryl testified. Thus, it would have been reasonable for appellant's counsel to wish to reveal this information first to lessen its impact before it was revealed by the state. Further, it may have been trial strategy to portray Cheryl as an angry lover who fabricated the allegations because appellant would not leave his wife, as appellant's wife alleged in the December 20, 2002 letter. Therefore, this argument is without merit.
 {¶ 21} Appellant next argues that his trial counsel was ineffective for failing to object to the introduction of tapes from Cheryl's answering machine containing threatening phone messages from appellant. Appellant claims the tapes were irrelevant and overly prejudicial. Evid.R. 402 provides that evidence that is relevant is admissible. However, despite being relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury. Evid.R. 403(A). Evid.R. 401 provides that relevant evidence is evidence tending to make a material fact more or less likely than it would have been without the evidence. The tapes in the present case were clearly relevant to support the prosecution's theory that appellant was angry over the break-up of the relationship. Further, Evid.R. 404(B) permits evidence of prior acts as proof of motive. In the present case, the threatening phone calls could be used to demonstrate that appellant was angry with Cheryl over their recent break-up and had a motive to attempt to break into her house and shoot at it. We do not find the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. Thus, this argument is without merit.
 {¶ 22} Appellant next argues that his counsel was ineffective by failing to object to the introduction of the February 16, 2002 telephone harassment complaint filed by Cheryl. Appellant fails to indicate the precise reason why his counsel should have objected. Regardless, it may well have been a part of counsel's trial strategy to allow the introduction of the complaint. Appellant's counsel was able to elicit from Cheryl on cross-examination that the case was dismissed and appellant was never prosecuted in that case, thereby implying that there was no evidence of the crimes and the claim was unfounded. This would support the defense's theory that Cheryl was also fabricating the current allegations, and she was repeatedly making up various unfounded crimes to avenge their break-up. Knowing the complaint was dismissed, appellant's counsel could have seen it as an opportunity to portray Cheryl as a vindictive ex-lover. Appellant has failed to demonstrate ineffective assistance of counsel in this respect.
 {¶ 23} Appellant next argues his counsel was ineffective in questioning Cheryl during cross-examination such that she was able to mention a "stay-away" order, when the prosecutor had elicited no reference to a stay-away order during direct examination. Cheryl testified that she was referring to a stay-away order issued as a condition of bond. Initially, we note that appellant's counsel did not directly elicit the testimony — Cheryl brought it up on her own in response to an unrelated question. Regardless, the stay-away order and revocation of such was already a part of the trial court record, and the judge was presumably already aware of it. Thus, there was no prejudice, and this argument is without merit.
 {¶ 24} Appellant next argues that his counsel was ineffective in failing to secure testimony or evidence regarding appellant's prior statements and the lack of any gunshot residue tests. Appellant first claims his counsel was ineffective by not obtaining evidence of his prior statement to police that "I ain't shot nothing." However, as the state points out, this court has rejected a similar claim in State v. Davis
(Aug. 15, 1996), Franklin App. No. 96APA02-240. In Davis, the defendant claimed his counsel was ineffective in failing to have admitted into evidence defendant's exculpatory statement to the police. We found the statement to constitute inadmissible hearsay, explaining that, in order for a statement to be non-hearsay under Evid.R. 801(D)(2), the statement must be offered against the declarant and cannot be in the declarant's favor. We noted that the Staff Notes to Evid.R. 801(D)(2)(a) specifically prohibit the admission of such self-serving statements. Thus, in Davis,
because the state did not attempt to introduce the defendant's statements at trial, and under the Evidence Rules defense counsel would have been precluded from introducing the defendant's own statement, defendant's counsel was not ineffective in failing to have admitted into evidence the defendant's statement to the police.
 {¶ 25} With regard to the tests, appellant claims that his counsel should have subpoenaed a detective to elicit questions about the failure to administer a gunshot residue test or trace metal test. He claims that an exchange between defense counsel and the trial judge indicated a need for testimony concerning police procedure in the administration of such tests and their reliability. We first note that, in the discussion between defense counsel and the judge, the judge found dubious value in the reliability of only the trace metal tests and did not discuss gunshot residue tests. Nevertheless, there is no indication in the record, and appellant does not put forth any, as to what the detective's testimony would have entailed or how it would have aided his case. Further, whether the trial judge believed the tests were of questionable reliability is of little consequence, given the tests were never administered. As we do not know what the detective would have testified to or what effect it would have had on the trial, we can find no prejudicial impact from defense counsel's actions. Therefore, this argument is without merit.
 {¶ 26} Appellant next argues that his trial counsel was ineffective in stipulating to guilt on the weapon under disability charge and failure to comply with the order of a police officer charge at the conclusion of the state's case. Appellant argues this stipulation denied him the benefit of the presumption of innocence, his right to have guilt proven by the state beyond a reasonable doubt, and the procedural protection of Crim.R. 11. He claims that the right to plead guilty is reserved to the defendant, not the attorney. However, we first note that, as the state points out, in viewing the "stipulation" in the context of the entire hearing, defense counsel was more so stipulating to certain facts supporting the charges rather than formally entering a plea of guilty on the charges. Further, there is no indication anywhere in the record, and appellant does not even argue, that he did not freely and knowingly consent to stipulating to the commission of these two offenses.
 {¶ 27} In addition, it was a reasonable trial strategy to admit guilt on those two charges and concentrate on evidence in defense of the other two charges. It is well-established that it may be a reasonable trial strategy to admit that some offenses were committed, while arguing other offenses were not committed. See State v. Bishop (July 20, 2000), Cuyahoga App. No. 76646; State v. Young (Apr. 19, 1999), Fairfield App. No. 30-CA-85; State v. Rosado (Nov. 7, 1996), Cuyahoga App. No. 70428;State v. McGlone (Mar. 11, 1992), Scioto App. No. 90CA1910; see, also,United States v. Simone (C.A. 7, 1991), 931 F.2d 1186, 1195 (it is "logical trial strategy" to contest some charges and to concede those that are supported by indisputable evidence and credible testimony). In the present case, there was overwhelming eyewitness evidence from myriad police officers to support the weapon under disability charge and failure to comply with the order of a police officer charge. Trial counsel could have well realized that trying to impeach and challenge the eyewitness testimony of so many police officers was an extremely difficult hurdle, and concentrating on the other two offenses, which were each supported directly by only the testimony of a single civilian witness, was a much more viable and sound strategy. Further, appellant specifically admitted in his testimony that he threw the weapon out of the vehicle. He was also indisputably apprehended with significant quantities of two calibers of ammunition on his person. In addition, the "disability" relating to the weapon under disability charge was a prior conviction for sexual battery, which was admitted by agreement. Trial counsel may have realized it would have been very difficult to raise a reasonable doubt as to the two offenses. Thus, this argument is without merit.
 {¶ 28} Appellant next argues that his counsel was ineffective for failing to present closing argument. At the close of evidence, the trial court asked whether the parties wished to argue their respective positions. The state waived. Appellant's counsel indicated that he was renewing his Crim.R. 29 motion. He then presented an argument in which he stated that he did not think there was proof beyond a reasonable doubt that appellant shot at Cheryl's house. He said that there was no indication that appellant was ever at the rear of the house from where the shots were fired. He argued there was no .32-caliber rifle found, and appellant was followed closely by the police and could not have thrown out a rifle that they would not have seen. He concluded by arguing that the state did not provide sufficient evidence to prove this case beyond a reasonable doubt. It is not certain whether defense counsel meant this argument to support the renewed Crim.R. 29 motion or to serve as a closing argument. Although most of this argument centered on the improper discharge of a firearm at or into a habitation, defense counsel's final comment urged generally that the state had not presented sufficient evidence to prove "this case" beyond a reasonable doubt.
 {¶ 29} Regardless, even if the statements by appellant's counsel did not constitute a closing argument, in affirming a decision from this court, the Ohio Supreme Court in State v. Burke (1995), 73 Ohio St.3d 399, recognized that the waiver of closing argument to the jury does not ipso facto constitute ineffective assistance of counsel, and that the waiver might simply constitute a matter of trial strategy. Id. at 404-405. InBurke, defense counsel waived closing argument after the state made a brief argument that only touched upon the particular facts of the case in a cursory manner. The Ohio Supreme Court found there existed a valid reason for the strategy on the part of defense counsel to waive closing argument. Id. The court found that, by foregoing closing argument, defense counsel precluded the state from presenting a strong rebuttal. Id.
 {¶ 30} In the present case, we are unable to conclude that the performance of appellant's trial counsel fell below an objective standard of reasonable representation. The state waived closing argument. We cannot find that appellant was materially prejudiced by counsel's alleged substandard performance. We do not believe that a reasonable probability existed that appellant would have been acquitted but for counsel's failure to make a closing argument. The case was a bench trial tried by an experienced trial judge who was well versed on the pertinent issues and the applicable law, and we cannot say that the court's decision would have been any different had a closing argument, or, at least, a longer closing argument, been presented by defense counsel. See, also, State v.Farrah (Apr. 18, 2002), Franklin App. No. 01AP-968 (counsel's decision to forego closing argument to the jury was not clearly unreasonable and no reasonable probability existed that defendant would have been acquitted but for counsel's failure to make a closing argument); State v. Wade
(Sept. 1, 1998), Franklin App. No. 97APA10-1393. Thus, this argument is without merit. For these reasons, appellant's first assignment of error is overruled.
 {¶ 31} Accordingly, appellant's two assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Bryant and Klatt, JJ., concur.