[Cite as *State v. Henning*, 2023-Ohio-2905.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio

   Appellee

v.

Heather Henning

   Appellant

Court of Appeals No. WD-22-046

Trial Court No. CR20210159

**<u>DECISION AND JUDGMENT</u>**

Decided: August 18, 2023

* * * * *

Paul A. Dobson, Wood County Prosecuting Attorney, and
David T. Harold and Dexter L. Phillips, Assistant Prosecuting
Attorneys, for appellee.

Gene P. Murray, for appellant.

* * * * *

**OSOWIK, J.**

**Introduction**

{¶ 1} On June 16, 2021, the Wood County Grand Jury indicted Heather Henning,

appellant herein, on Three Counts: Count One, Involuntary Manslaughter, a felony of

the first degree, under R.C. 2903.04(A) and (D); Count Two, Corrupting Another with

Drugs, a felony of the second degree, under R.C. 2925.02(A)(3); Count Three, Trafficking in a Fentanyl Related Compound, a felony of the fifth degree, under R.C. 2925.03(A)(l).

{¶ 2} Following a jury trial, appellant was convicted on each count. The court granted appellant's motion to merge all three counts into Count One, Involuntary Manslaughter, for purposes of sentencing. Appellant was then sentenced to serve a definite minimum term of eight (8) years and a maximum indefinite term of twelve (12) years in the Ohio Department of Rehabilitation and Corrections. She now appeals from that order. For the following reasons, we affirm.

### Factual Background

{¶ 3} The following facts were established at trial. At the outset, it was established that appellant and the decedent, J.H. had been previously married, but were divorced at the time of his death. Nevertheless, the couple had maintained an ongoing relationship together. Their two minor children were in the custody of a friend of appellant.

{¶ 4} On January 6, 2021, at approximately 5:00 p.m., Henning drove to Toledo and sold some personal items for $180 in cash. At 5:49 p.m., J.H., the decedent, texted appellant "Ok your [sic] on your way home right." At 5:49 p.m., appellant responded, "I gotta get the dope n I will be." At approximately 6:38 p.m., Henning used the cash to buy fentanyl in Toledo from a drug dealer. She then returned to 326 Derby, Bowling Green, Wood County, Ohio, where J.H. was waiting for her.

2.

**{¶ 5}** Appellant furnished J.H. with the fentanyl she had just purchased in Toledo. On January 7, 2021, at approximately 2:30 a.m., appellant injected J.H. with fentanyl she purchased in Toledo. At 9:39 a.m., from the Derby residence, Henning called 911, and indicated J.H. was unconscious and not breathing. She was told by the dispatcher to perform CPR until emergency medical personnel arrived at the residence.

**{¶ 6}** The first to respond to the residence was Bowling Green Police Officer Jason Broshious. He observed that J.H. was unconscious and not breathing. J.H.'s body was grey in color and his lips were blue. J.H. did not have a pulse. Henning was on the floor with J.H. attempting to perform CPR with one hand, and talking on the phone with the other hand. There was nobody else in the Derby residence. Broshious asked Henning if J.H. had overdosed on drugs. Appellant responded, "No." Consequently, Broshious did not consider administering Narcan to J.H. Then, Broshious took over performing CPR on J.H., but could not reestablish a pulse or breathing. Paramedics initiated resuscitation efforts and were able to reestablish a pulse, however, J.H. remained unconscious. J.H.'s eye pupils remained dilated and fixed.

**{¶ 7}** Paramedics rushed J.H. to the Wood County Hospital and transferred care. Neither paramedics nor Wood County Hospital administered fentanyl to J.H. He never regained consciousness. Later the same day, at 3:35 p.m., at the Wood County Hospital, J.H. was pronounced dead.

3.

**{¶ 8}** The next day, on January 7, 2021, Deputy Lucas County Coroner, Dr. Thomas Blomquist, MD, Ph.D., performed an autopsy of J.H. Based on the autopsy and the toxicology report, Dr. Blomquist concluded that fentanyl toxicity was the cause of J.H.'s death.

**{¶ 9}** At trial, Dr. Blomquist explained that a lethal dose of fentanyl is five (5) nanograms per milliliter. Dr. Blomquist further explained that J.H.'s blood contained fentanyl in the amount of four hundred and sixty-three (463) nanograms per milliliter. Dr. Blomquist testified, "So he was close to 100-fold more than what you would anticipate, based on toxicology alone-what could kill someone."

**Assignments of Error**

**{¶ 10}** Appellant presents three assignments of error for our review. Her first assignment is stated as follows:

ERROR #1: THE STATE'S KEY WITNESS HAS CUSTODY OF
TWO MINOR CHILDREN OF DEFENDANT-APPELLANT, AND
SAID WITNESS HAD WRITTEN A LITANY OF NOTES THAT
PRE-EMPTIVELY INCIRIMINATED DEFENDANT-APPELLANT,
AND THEN EMBELLISHED THOSE NOTES WITH HER BIASED
TESTIMONY, IN ADDITION TO LIKEWISE PRE-EMPTIVELY
AND VOLITIONALLY CONTACTING THE POLICE AND
MAKING A RECORDED TELEPHONE CALL TO FURTHER
INCRIMINATE THE DEFENDANT-APPELLANT, THEREBY

RESULTING IN HARMFUL AND REVERSIBLE PLAIN ERROR,
AS BEING AGAINST PUBLIC POLICY FOR A STATE'S KEY
WITNESS HAYING THE INCENTIVE AND ULTERIOR MOTIVE
OF KEEPING CUSTODY OF DEFENDANT-APPELLANT'S TWO
MINOR CHILDREN, UPON A CRIMINAL CONVICTION OF THAT
DEFENDANT, AND THUS THEREBY DEPRIVING HER OF THE
FUNDAMENTAL AND SUBSTANTIAL RIGHT TO DUE PROCESS
OF LAW.

{¶ 11} This assignment loosely contains a catalog of scattered errors purportedly committed by the trial court encircling the testimony of one witness. The absence of supportive caselaw makes analysis of this assignment a toilsome challenge for this court. Nevertheless, we shall attempt to address this assignment by subdividing the claims of appellant.

{¶ 12} First, appellant takes exception to the use of notes by prosecution witness Suzanne Saunders during her direct examination. Prior to empaneling a jury, the record shows that there was substantial discussion concerning appellant's objection to the anticipated use of notes by this witness when she was to testify during the prosecution's case in chief. The state argued that the witness took detailed notes of her interactions with appellant and that she should be permitted to refresh her recollection by the use of her personal notes.

5.

{¶ 13} It is apparent that the notes were disclosed to and reviewed by appellant prior to Saunders' testimony. Appellant maintained an objection to the use of these notes on the basis that the manner and use of these notes were prejudicial and would impact the jury. Counsel argued that the notes were so detailed that the jury would "have such an impression of prejudice" against appellant. Other than this generalized objection, appellant did not specify any aspect of any of the notes or the manner of their use that would be prejudicial.

{¶ 14} The court overruled appellant's objection and ruled that the witness would be allowed to reference these notes during her testimony in accordance to the rules of evidence, if her memory would need to be refreshed.

{¶ 15} During the direct examination of Saunders, the prosecution indicated that she would be asked about particular dates. The prosecutor then stated "And if need be, if you need your memory refreshed, you're free to refer to your notes as needed, okay?"

{¶ 16} The practice of "refreshing" a witness's recollection by means of a writing is prescribed by Evid.R. 612, which states in pertinent part " * * * if a witness uses a writing to refresh his memory for the purpose of testifying, either: (1) while testifying; or (2) before testifying, if the court in its discretion determines it is necessary in the interests of justice, an adverse party is entitled to have the writing produced at the hearing." The propriety of the form of the questions employed to establish this lack of present recollection is largely within the discretion of the trial court. *Dayton v. Combs,* 94 Ohio App.3d 291, 297, 640 N.E.2d 863 (2d Dist.1993).

6.

{¶ 17} In this case, the manner and form in which the prosecution established Saunders' lack of recollection is a less than perfect foundation to enable the use of her notes to refresh her memory. Regardless, it appears from the record that she was not reading from her notes verbatim once her memory of the dates was refreshed. We note that it is the testimony of Saunders that is the evidence that was considered by the jury. The out-of-court statement was not placed before the jury and was never admitted into evidence.

{¶ 18} The writing used to refresh the witness's recollection is not admitted into evidence unless admission is requested by the adverse party, and in any event has no substantive evidentiary significance. *State v. Harris*, 8th Dist. Cuyahoga No. 110982, 2022-Ohio-4630, ¶ 33, quoting *Dayton* at 298. Appellant did not move to have any of the Saunders notes formally admitted into evidence. Saunders was subject to cross-examination concerning her recollection of the interactions with appellant and the accuracy of her "documentation."

{¶ 19} Accordingly, after an examination of the complete testimony of Saunders, we conclude that the trial court did not abuse its discretion in permitting her to refer to her personal notes when testifying to refresh her recollections.

{¶ 20} The second segment of appellant's first assignment of error focuses on the two recorded telephone calls between Saunders and appellant. The first involved a telephone conversation that occurred on January 8, 2021. The second recorded telephone conversation occurred on January 11, 2021. That conversation took place at the Bowling

7.

Green Police Department.  Both recorded conversations were admitted into evidence as composite State Exhibit No. 10 (as well as audio thumb drive 10A), without objection from appellant.

{¶ 21} Appellant argues that during these conversations, she was "grief-stricken and sad" and that the video that was played before the jury (Exhibit No. 10) appeared to show that Saunders was presented a paper with questions seemingly prepared by the police.  However, Saunders was cross-examined on the circumstances of the telephone calls and the preparation of questions by the police.

{¶ 22} Appellant also contends that Saunders was "biased" and had an "ulterior" motive of keeping custody of appellant's two minor children.  Counsel cross-examined Saunders on this precise point.  Saunders testified that it was, in fact, appellant that had approached Saunders over "many years" to take custody of her two youngest children because of her own (appellant's) drug problem.

{¶ 23} From the outset of the trial, it appears that counsel for appellant adopted a deliberate strategy to argue that Saunders is a less than credible witness.  For example, in his opening statement to the jury, counsel for appellant advocated that Saunders wanted to "document" for the purposes of keeping custody of these children.  And again, when counsel moved for acquittal pursuant to Criminal Rule 29(A) at the close of the state's case, counsel argued that Saunders was "discredited."

{¶ 24} Claims of bias and motive to testify are undeniably attacks on the credibility of the witness, Saunders.  We have repeatedly pointed out that an evaluation of

witness credibility is not proper on review by this court, unless the reviewing court finds that a reasonable juror could not find the testimony of the witness credible. *State v. Rance*, 6th Dist. Lucas No. L-21-1234, 2022-Ohio-4125, ¶ 20, quoting *State v. Dean*, 6th Dist. Lucas No. L-16-13012, 2018-Ohio-1740, ¶ 25-27. The fact that Saunders had custody of appellant's children (at appellant's request) does not render her testimony incredible. Credibility assessments regarding the testimony of witnesses are well within the province of the jury. *State v. McGowan*, 10th Dist. Franklin No. 18AP-467, 2019-Ohio-5319, ¶ 67.

{¶ 25} While Henning contends that the "biased" testimony of Saunders should be considered "plain error" she makes no argument to advance such an analysis and we, as an appellate court, will not create an argument on her behalf. Accordingly, as appellant failed to develop her plain error argument, we do not reach the merits of this assertion and decline to address it. *Simon v. Larreategui*, 2d Dist. Miami No. 2021-CA-41, 2022-Ohio-1881, ¶ 41, *appeal not allowed*, 167 Ohio St. 3d 1527, 2022-Ohio-3322, 195 N.E.3d 166.

{¶ 26} As a final branch of appellant's first assignment of error, she pleads that "There ought to be a public policy against this way to work to criminalize a parent" in the recording of her telephone calls by Saunders. In support, Henning points to the language of R.C. 2933.52(B)(4):

(4) A person who is not a law enforcement officer and who intercepts a wire, oral, or electronic communication, if the person is a party to the

9.

communication or if one of the parties to the communication has given the person prior consent to the interception, and if the communication is not intercepted for the purpose of committing a criminal offense or tortious act in violation of the laws or Constitution of the United States or this state or for the purpose of committing any other injurious act;

Appellant's argument suggests that the telephone conversations with Saunders were inculpatory. As such, appellant considers this evidence to be "injurious" under the terms of the statute and hence, at least against the public policy of the statute.

{¶ 27} The record fails to show that either the public policy argument or the application of R.C. 2933.52(B)(4) was presented to the trial court below in any manner or form. Appellant has brought these arguments for the first time in her appeal to this court. A party may not change her theory of the case and present new arguments for the first time on appeal. *Tokles v. Black Swamp Customs, L.L.C.*, 6th Dist. Lucas No. L-14-1105, 2015-Ohio-1870, citing *State ex rel. Gutierrez v. Trumbull Cty. Bd. of Elections,* 65 Ohio St.3d 175, 177, 602 N.E.2d 622 (1992). Arguments raised for the first time on appeal will not be considered by an appellate court. *Gardi v. Bd. of Edn.*, 8th Dist. Cuyahoga No. 99414, 2013-Ohio-3436, ¶ 27, citing *State ex rel. Quarto Mining Co. v. Foreman,* 79 Ohio St.3d 78, 81, 679 N.E.2d 706 (1997).

{¶ 28} Appellant had adequate opportunity to raise these arguments before the trial court but did not. We decline to review an issue raised for the first time on appeal. *Seyfried v. O'Brien*, 2017-Ohio-286, 81 N.E.3d 961, ¶ 12-14 (8th Dist.).

10.

{¶ 29} For the forgoing reasons, we find appellant's first assignment of error to be without merit and found not well-taken.

{¶ 30} Appellant's second of assignment of error states:

**ERROR NO. 2:** A STATE WITNESS'S EXTREMELY PEJORATIVE TESTIMONY ABOUT THE DEFENDANT-APPELLANT'S NEED TO MAINTAIN HER APPOINTMENT FOR METHADONE TREATMENT, WHEN CROSS-EXAMINATION ABOUT IT WAS NOT ALLOWED BY THE TRIAL COURT, WAS HARMFULLY PREJUDICIAL AND DENIED THE DEFENDANT-APPELLANT'S FUNDAMENTAL AND SUBSTANTIAL RIGHTS TO A FAIR JURY TRIAL AND TO DUE PROCESS OF LAW AND TO CONFRONTATION OF WITNESSES.

{¶ 31} In this assignment, appellant contends the trial court erred when it denied her the ability to cross-examine a police officer about the effects of methadone treatment.

{¶ 32} Officer Jason Broshious of the Bowling Green Police Department was the first to respond to a medical emergency call at 326 Derby on January 7, 2021. When the emergency personnel began to transport the decedent to the Wood County Hospital, he testified "I asked Mrs. Henning if she had a ride to the hospital and she said that she had her own car. She had to run to Toledo first to dose. I asked her what that meant. And she said she needed to get methadone before they closed. So I

11.

advised her that what the fire department was trying to say was it was looking really bad, that she probably needed to go to the hospital quickly. But she said she was going to Toledo first." Broshious further stated "I've been doing this 28 years and I've never seen a spouse that didn't want to either be in the ambulance with the spouse or hurry to the hospital to be with them as soon as possible."

{¶ 33} On cross-examination, Officer Broshious was asked "Do you know what methadone is?" Broshius responded "Yes." "It's a drug they give to heroin addicts to compensate for the heroin drugs that they're addicted to, so they don't relapse." Counsel then asked the officer "Do you know what happens when a person doesn't have their methadone?" Before he could answer, the state interposed an objection, based upon the competency of the witness that he is a law enforcement officer and not a medical doctor or toxicologist. The trial court sustained the objection.

{¶ 34} Appellant now argues that since Broshious answered affirmatively that he knew what methadone was, he "opened the door to cross-examination questions by the defense." Henning claims that the inability to question the officer about "what happens when a person doesn't have their methadone" left the jury with the "wrong impression" that she "couldn't care less about" the decedent. The objection to appellant's question was sustained by the trial court based upon Evid.R. 602 which states:

> A witness may not testify to a matter unless evidence is introduced
>
> sufficient to support a finding that the witness has personal knowledge of

12.

the matter. Evidence to prove personal knowledge may, but need not, consist of the witness' own testimony. This rule is subject to the provisions of Rule 703, relating to opinion testimony by expert witnesses.

{¶ 35} Appellant presents no argument concerning the application of Evid.R 602 to the question posed to officer Broshious. It was not established that Officer Broshious had personal knowledge of the physiological effects of methadone. Nor was it established that he was an expert witness that could be presented such a hypothetical question. Therefore, the trial court properly sustained the objection to the question posed to Officer Broshious.

{¶ 36} Appellant also claims that the inability to cross-examine Broshious on the effects of methadone dosing violates her Sixth Amendment right to confront the witness.

{¶ 37} Appellant has no Sixth Amendment right to confront a witness with irrelevant evidence. *In re Michael*, 119 Ohio App.3d 112, 119, 694 N.E.2d 538 (2d Dist.1997). The confrontation clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish. *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985).

{¶ 38} We review de novo evidentiary rulings that implicate the Confrontation Clause. *State v. Kamer,* 6th Dist. Wood No. WD-20-084, 2022-Ohio-2070, ¶ 163-165, citing *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 97.

13.

**{¶ 39}** At the outset, we must therefore determine whether the statement by Broshious is testimonial because the Confrontation Clause does not apply to nontestimonial hearsay. *State v. Siler*, 116 Ohio St.3d 39, 2007-Ohio-5637, 876 N.E.2d 534, ¶ 21, citing *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. *State v. Siler*, 16 Ohio St.3d 39, 2007-Ohio-5637, 876 N.E.2d 534, ¶ 30.

**{¶ 40}** In this instance, Officer Broshious testified when he asked the appellant if she had a ride to the hospital. Appellant responded "She had her own car. She had to run to Toledo first to dose. I asked her what that meant. And she said she needed to get methadone before they closed."

**{¶ 41}** These circumstances objectively establish that there was an ongoing emergency, and that the primary purpose of the question to appellant was to assist Henning herself. Appellant called 911 about J.H. being unresponsive. He was her former spouse. She was performing CPR when the first responder arrived. EMS personnel had struggled to get a faint pulse before placing him in the vehicle for transport to Wood County Hospital.

**{¶ 42}** Under these circumstances, appellant's statements to Officer Broshious are plainly nontestimonial and it could not reasonably be expected that those statements would have been used in a later criminal proceeding. *Id.* at ¶ 30-31.

14.

**{¶ 43}** Based upon these facts, appellant's rights to confrontation and cross-examination under the Sixth Amendment to the United States Constitution and under Section 10, Article 1 of the Ohio Constitution are not implicated.

**{¶ 44}** Accordingly, we find appellant's second assignment of error not well-taken and denied.

**{¶ 45}** Appellant's third assignment of error is stated:

**ERROR #3:** THE REPEATED DENIAL OF THE TRIAL COURT TO ADMIT DEFENDANT- APPELLANT'S EXHIBIT A, AND TO ALSO DENY ANY CROSS EXAMINATION ABOUT SAME, WHICH CONTAINED EXCULPATORY EVIDENCE FAVORABLE TO THE DEFENDANT- APPELLANT, DID THEREBY DENY THE DEFENDANT- APPELLANT'S FUNDAMENTAL AND SUBSTANTIAL RIGHT TO CONFRONTATION OF WITNESSES AND ALSO VIOLATED THE DEFENDANT- APPELLANT'S FUNDAMENTAL AND SUBSTANTIAL RIGHTS TO A FAIR JURY TRIAL AND TO DUE PROCESS OF LAW.

**{¶ 46}** At trial, the prosecution presented testimony of Sergeant Andrew Mulinix, Jr. of the Bowling Green Police Department. Mulinix was an investigative detective in this case. After executing a search warrant concerning appellant's cell phone, a report was prepared itemizing the text messages between the decedent and Henning.

15.

**{¶ 47}** When Mulinix testified, the state only introduced two exhibits concerning any cell phone records. State's Exhibit 7 is extractions from Henning's cell phone for the period January 6, 2021, at 10:54 a.m. through January 6, 2021 at 7:12 p.m.. State's Exhibit 8 is from the period December 8, 2020, at 10:21 p.m. through December 11, 2020 at 8:29 p.m.. During cross-examination of Sergeant Mulinix, appellant moved to have "Defense Exhibit A" introduced.

**{¶ 48}** The prosecution objected to its admissibility because the prosecution believed that the exhibit contained text messages from appellant. Hence, the state argued, since they would be out of court statements of appellant, they would be inadmissible hearsay and were not subject to any exception to the hearsay rule. "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted in the statement. Evid.R. 801(C). *State v. Morris*, 6th Dist. Lucas No. L-22-1025, 2023-Ohio-168, ¶ 57.

**{¶ 49}** Some statements are not considered to be hearsay under certain well-defined circumstances. One of those occasions is set forth in Evid.R. 801(D)(2) which states in relevant part:

D) Statements That Are Not Hearsay. A statement is not hearsay if:

(2) Admission by Party-Opponent. The statement is offered against a party and is (a) the party's own statement, in either an individual or a representative capacity, or (b) a statement of which the party has manifested an adoption or belief in its truth, or (c) a

16.

statement by a person authorized by the party to make a statement

concerning the subject, or (d) a statement by the party's agent or

servant concerning a matter within the scope of the agency or

employment, made during the existence of the relationship, or (e) a

statement by a co-conspirator of a party during the course and in

furtherance of the conspiracy upon independent proof of the

conspiracy.

Therefore, for Henning's text messages to the deceased to be considered non-hearsay

under Evid.R. 801(D)(2), the statement must be offered against the declarant and cannot

be in the declarant's favor. *See Staff Notes* to Evid.R. 801(D)(2)(a).

**{¶ 50}** Evid.R.801(D)(2) specifically prohibits the admission of such self-serving

statements. Appellant is precluded from introducing her own statement into evidence in

the manner presented at trial in this case. *State v. Dunlap*, 10th Dist. Franklin No. 03AP-

481, 2003-Ohio-6830, ¶ 24.

**{¶ 51}** However, counsel for appellant argued before the trial court that the

entirety of "Defense Exhibit A" contained text messages from the deceased to appellant,

not from appellant to the deceased. Nevertheless, the trial court sustained the objection

and did not permit Defense Exhibit A to be admitted into evidence. That exhibit was

ultimately proffered and is included in this record. This extraction report contains 461

messages received by appellant from the decedent ("referred to as Daddy") for the period

from February 19, 2020, at 3:05 p.m. until January 6, 2021, at 6:41 p.m..

17.

{¶ 52} Remarkably, our review of the proffered "Defense Exhibit A" reveals that there are no text messages originating from appellant. In fact, the entire report is a redacted version of nothing but text messages from the decedent to appellant exclusively. Each message is marked "incoming" from "Daddy" which is undisputed to be the decedent. Thus, the trial court erred in ruling that "Defense Exhibit A" was inadmissible because it contained statements of the appellant.

{¶ 53} However, the admission of evidence lies within the broad discretion of the trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 62, citing *State v. Issa*, 93 Ohio St.3d 49, 64, 752 N.E.2d 904 (2001).

{¶ 54} Having determined that the trial court erred in not allowing cross-examination and admission of "Defense Exhibit A," we must determine whether that error was harmless. *State v. Kryling*, 6th Dist. Wood, No. WD-20-084, 2023-Ohio-1921, ¶ 13. Harmless error is any error, defect, irregularity, or variance which does not affect substantial rights. *State v. Kamer*, 6th Dist. Wood, No. WD-20-084, 2022-Ohio-2070, ¶ 154; Crim.R. 52(B).

{¶ 55} We note at trial, appellant made no objection to the admissibility of the text messages from the deceased. In fact, it is her contention that all of the text messages from the decedent be admitted into evidence so that the "untold rest of the story * * * the

18.

broader picture, the true picture, which the prosecutor did not want the jury to read about, and more importantly, to know about."

{¶ 56} A close examination of the proffered exhibit reveals messages from the decedent to appellant starting from February 19, 2020, nearly a year prior to the decedent's death. Those messages mostly involve statements concerning his activities of the day such as "playing football," "on my way," "Arby's," "cut the grass." In the months and days prior to his demise, the texts do indicate a sense of desperation in urging appellant to obtain more drugs for him because he was "throwing up" and "bring dope."

{¶ 57} There is no apparent beneficial value of these texts that would have any bearing on appellant's defense, despite her argument that the selective use of limited relevant portions by the state somehow prevented the jury from considering "the rest of the story" and thereby making it easier to obtain a conviction. Appellant has failed to demonstrate how this error resulted in prejudice to her.

{¶ 58} Henning claims that these texts contain "exculpatory evidence" favorable to her and "pertinent" to her defense. Nevertheless, she fails to point to any specific messages either individually or cumulatively that would be materially exculpatory and critical to her defense. In arguments to the trial court and in closing to the jury, an obvious theme of her defense was an inarticulate need to "tell the rest of the story" through these text messages.

{¶ 59} The exculpatory value of the decedent's incoming text messages to appellant are not immediately apparent. After review, there is nothing to indicate that

19.

these texts might be expected to play a significant role in her defense. *California v. Trombetta,* 467 U.S. 479, 488-89, 104 S.Ct. 2528 (1984).

{¶ 60} Appellant's contention that the text messages from the deceased to appellant contained in "Defense Exhibit A" are exculpatory and pertinent to her defense are not supported by the proffered exhibit. Therefore, any possible error in the court's failure to permit cross-examination and admit the exhibit resulted in no prejudice to appellant and was harmless. *Bleicher v. Univ. of Cincinnati Coll. of Med.,* 78 Ohio App. 3d 302, 313, 604 N.E.2d 783 (10th Dist.1992)

{¶ 61} Appellant further asserts that the trial court's denial of cross-examination of Sergeant Mulinix on "Defense Exhibit A" was a violation of her rights guaranteed under the Confrontation Clause of the Sixth Amendment. Counsel argued to the trial court that the texts would show that the deceased "was so domineering that he basically would have done this to himself."

{¶ 62} Appellant has not indicated how cross-examination of Sergeant Mulinix on the decedent's texts would be permissible on the issue of whether the deceased had injected himself with the lethal drugs. Certainly, the police officer would not have been competent to render an opinion on the issue or on the issue of whether J.H. was "domineering". Further, the declarant in this instance was deceased and certainly unavailable for cross-examination.

{¶ 63} Appellant does not have an unfettered right to offer testimony that is incompetent or otherwise inadmissible under standard rules of evidence. *Taylor v.*

20.

*Illinois*, 484 U.S. 400, 410, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988). *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 46.

{¶ 64} Again, based upon these facts, appellant's rights to confrontation and cross-examination under the Sixth Amendment to the United States Constitution and under Section 10, Article 1 of the Ohio Constitution are not implicated. As previously stated, only testimonial evidence is subject to confrontation and cross-examination. There is no reason to believe that the statements from the decedent were made by him with any intention that they be used in future legal proceedings. The Confrontation Clause is not implicated in the use of these text messages because they are not testimonial.

{¶ 65} As part of her third assignment, appellant also claims that the trial court infringed upon her rights to a fair trial and to due process of law. However, appellant does not present any arguments in support of this proposition. The record also shows a failure to raise these constitutional arguments before the trial court. In this instance, Henning has not specified which section and how the Sixth and Fourteenth Amendments to the United States Constitution and Article I Section 10 of the Ohio Constitution or any other relevant sections have been violated. As stated previously, since appellant has failed to develop this argument, we will not create an argument on her behalf. As such, we need not address the fair trial and due process claims of her third assignment.

{¶ 66} For the forgoing reasons, we find no merit in appellant's third assignment of error and find it not well-taken and denied.

21.

## Conclusion

**{¶ 67}** The judgement of the Wood County Court of Common Pleas is affirmed.

Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.                    _____
                                                        JUDGE
Christine E. Mayle, J.

                                                        _____
Charles E. Sulek, J.                     JUDGE
CONCUR.

                                                        _____
                                                        JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.

22.